1816.

STOUGHTON
v.
LYNCH.

## STOUGHTON *against* LYNCH.

A partner who draws out money from co-partnership funds is not chargeable with compound interest, but with simple interest only, on the sums drawn out; unless it appears that he has traded or speculated with the money, and made a profit on it, and refused, on being called on for the purpose, to disclose the profits.

The correct and legal mode of computing interest, on an account between debtor and creditor, where partial payment are made, is first to carry the payment to the extinguishment of the interest due, and if such payment exceeds the interest due at the time, then to deduct the surplus only from the principal, and compute interest on the balance to the next payment.

[ * 210 ]  *Whether the practice prevailing among merchants in settling their accounts, to state an *interest account,* in which interest is charged on each *item* of principal on the *debit* side, and credited on each *item* on the *credit* side of the account, and a balance of such interest account struck, and added to the balance of principal, is to be adopted in the settlement of accounts between merchant and merchant? *Quære.*

But where a master, under an order of reference to him, in stating an account between the parties, who were partners in trade, adopted this mercantile usage, the account was allowed to stand, there being evidence before the master that from the books of account, and otherwise, the parties themselves had followed this usage, and the calculation was so made by an eminent merchant to whom the accounts were referred, with the consent of the parties, who did not question the statement when it was brought in to the master.

In stating an account between partners, the true dates, as furnished by the books of account themselves, ought to be assumed.

A party cannot surcharge and falsify an account, unless upon the ground of mistake or error distinctly charged.

The period of the dissolution of partnership is the proper time to make a rest, and adjust the balance of the partnership account; and the partner against whom the balance is found, is chargeable with interest thereon.

A *recital* in a deed, founded in mistake, and untrue in fact, will not be allowed to operate, by way of *estoppel,* to exclude the truth satisfactorily shown to the Court.

*October 24th.*    THE bill, which was filed the 12th of *July,* 1805, was for an account between the parties, who were partners in trade

168

The defendant put in an answer in *June*, 1807, which was excepted to, and an amended answer filed in *October*, 1807. The plaintiff having filed a replication, witnesses were examined, exhibits proved, and publication being passed, the cause was brought to a hearing in *June*, 1814. On the 6th of *July*, 1814, a decretal order was entered, for a reference to a master to take and state an account between the parties; and he was directed that the defendant should be charged with interest on all sums drawn out of the copartnership funds by him, beyond the amount necessary for his private expenses; and to report what was the reasonable rent for a store and lot of ground mentioned in the pleadings, since the bill was filed, and for what time the same had been occupied by the plaintiff, since issue was joined in the cause; and all further directions were reserved, until the coming in of the report. The parties were examined on interrogatories, respectively, *before a master; and the books of account were, by the consent of the parties, delivered to Mr. *Samuel Corp*, a respectable merchant, for the purpose of stating their respective accounts. After various hearings before the master, exceptions and orders, the cause was brought on to a hearing on the 1st of *July*, 1815, on the coming in of the master's report, to which the parties made various exceptions; and, on the 8th of *July*, 1815, a decretal order was made overruling all the exceptions to the report, with the qualification, that the master, in taking an account of the sums drawn out, or received by the defendant from the copartnership funds, beyond the amount necessary for his private expenses, be directed to deduct from the amount of the sums so drawn or received in each year, such sum, not exceeding the whole amount so drawn or received each year, as, under all the circumstances, should appear to be a reasonable allowance for the expenses of the defendant's family during each year, including therein a reasonable sum for the education of his children, and excluding any allowance for house rent, during the time the defendant occupied a house of his own, referred to in the accounts, further than it should be proved that the funds of the partnership were withdrawn by the defendant to pay interest on the cost of the house; and that the defendant pay the costs of the special report and subsequent proceedings thereon. (See vol. 1. p. 467—472. *S. C.*)

The cause being again before the master, witnesses were further examined, and the parties heard before him : he made a report, dated the 13th of *May*, 1816, which was filed on the 3d of *June* last, with the schedules of the various accounts and statements annexed. By this report, the master made a balance due to the plaintiff from the defendant, on

*Margin notes:*

1816.

STOUGHTON
v.
LYNCH.

[ * 211 ]

1816.

STOUGHTON
v.
LYNCH.

[ * 212 ]

the 13th of *May*, including interest, of 22,216 dollars and 20 cents.    Mr. *Corp*, in making up the account of sums of money drawn by the defendant out of the copartnership funds, beyond the amount of his capital, had charged *compound interest* on the sums, from *February*, 1788, *until *July*, 1795, when the partnership was dissolved; but this being objected to before the master, he altered the account so as to charge simple interest only.    Both parties filed *exceptions* to the master's reports ; and on the 21st of *September*, an order, by consent, was entered, allowing either party to file *further exceptions*, which were accordingly filed, and the cause was set down for a hearing on the *exceptions and further exceptions* of both parties to the report.    All the exhibits which had been directed to be filed with the assistant register, together with the partnership books of account, were brought before the Court.

It is unnecessary to state the pleadings and proofs in the cause, which were voluminous, nor the report or exceptions, as the material facts are sufficiently stated by the chancellor, in noticing the several points which were discussed before him.

The cause was argued by

*Harison*, and *Wells*, for the plaintiff.

*T. A. Emmet*, and *Riggs*, for the defendant.

*October* 24th.

The argument occupied five days, from the 1st to the 6th of *October ;* and the cause having stood over for consideration until this day, the following opinion was delivered by the Court :

[ * 213 ]

THE CHANCELLOR.    This cause comes on upon exceptions taken, by each party, to the master's report.    The first exception on the part of the plaintiff is, that the master, in charging interest upon the moneys drawn or received by the defendant from the copartnership funds, beyond the amount necessary for his private expenses, has charged simple interest only, between the 15th of *February*, 1788, and the 3d of *July*, 1795, whereas interest ought to have been added to the principal at the end of each year, and *interest computed upon the aggregate amount.    The decretal order of the 6th of *July*, 1814, directing the account to be taken between the parties, specially declared that each of the parties be charged with the sums respectively drawn or received from the copartnership funds, and that the defendant be, moreover, charged with interest upon all such sums of money as
170

may have been drawn or received by him beyond the amount necessary for his private expenses. It was certainly not within the contemplation of the Court, when that order was made, that compound interest was to be charged against the defendant. Before such charge was to be made, he should have been called on to account for the profits of the moneys he had overdrawn; as, if he had not disclosed the profits, then a recourse could have been had to compound interest as a substitute for the profits which he might reasonably be supposed to have made. But, under the circumstances of this case, there was not sufficient reason appearing to the Court for the presumption of extraordinary gain made by the moneys, or for imputing to the defendant any very gross violation of the contract between the parties. The defendant had not traded on the moneys overdrawn, and it was believed that his land speculations did not yield a profit requiring such an exaction, even if the moneys withdrawn had been applied to that object. And the plaintiff himself was, in some degree, remiss in not causing a balance of the books to be annually made, and the amount of the sums withdrawn annually placed under the view of the parties. The exception, therefore, must be overruled.

The third exception is, that the master, in stating the accounts between the 15th of *February*, 1788, and the third of *July*, 1795, has not, as he ought to have done, in passing moneys, from time to time, to the credit of the defendant, first deducted the interest due from the defendant to the copartnership, and if such credit exceeded the interest due, the surplus only of such credit should have been deducted *from the principal, and interest computed only on the balance. This exception goes to the whole mercantile usage of computing interest on merchants' accounts. The correct mode of crediting payments, as between debtor and creditor, is to carry them, in the first place, to the extinguishment of the interest due, according to the principle of this third exception; and it is susceptible of mathematical demonstration, that if credits be not so applied, but the principal of the debt is left to continue upon interest, and interest is computed upon the payments as they are successively made, a debt will, in the course of a few years, (and the time will be longer or shorter according to the rate of interest,) be wholly extinguished by payments of interest, without paying a cent of principal. I have, however, always understood and observed, that the usage amongst merchants, in stating their accounts, is different, and conformable to the master's report. It is the debtor who gains, and the creditor who loses by this mode. But this usage is not very material when there are long mutual credits, because the rule operates equally upon the

1816.

STOUGHTON
v.
LYNCH.

When compound interest is chargeable on moneys overdrawn by one partner from the partnership funds.

The true mode of computing interest on an account between debtor and creditor where partial payments are made.

[ * 214 ]

STOUGHTON
v.
LYNCH.

As to the practice of merchants in stating *interest* accounts; *Quære*.

[*215]

credits of each party, and if the balances are nearly the same, the result is equal.   I have often been surprised that the sagacity of merchants should not have perceived the inconvenience of their rule, as between them and their country customers, for, being generally creditors, the loss is theirs; but I apprehend that this is met and corrected by the custom of making short rests in their accounts, and computing interest on the balances that from time to time arise.   Such rules will generally produce, in the course of time, their correspondent equivalent.   In the present case, I have no doubt, the parties, throughout their accounts, have followed the mercantile usage, and as far as any partial calculation or settlements, in respect to each other, have been made, they would, of course, follow that custom.   Shall I, then, break in upon that usage, in the settlement of these copartnership accounts?   As the *plaintiff claims to be, and is found to be, the creditor, he has an interest that I should do so ; but I do not think, upon a consideration of this case, that I ought to disturb the complicated calculations attending the report upon this point.   The master has not reported, nor has he been called upon to report, the evidence he may have had of the practice of the copartnership derived from their books, or from other circumstances.   I have a right, therefore, to presume he had sufficient evidence of their practice to warrant the mode he has adopted.   It is further to be observed, as a fact admitted upon the argument, that the accounts of the copartnership were, by mutual consent, referred to, and made up, by Mr. *Samuel Corp*, a respectable merchant, well known as an accurate accountant, and perfectly familiar with mercantile understanding and usage on this subject.   I presume, that when the calculations came in, they were never questioned on this point, before the master, but were acquiesced in by both parties.   There is nothing before me to contradict this natural and necessary inference, and I think the parties are properly concluded.   Even without this inference, I am not prepared to say that the mercantile practice ought to be questioned on a settlement of accounts between merchants themselves.   Their running accounts are kept, entries made, and balances, from time to time, adjusted, upon the fact of their own invariable usage as to their mode of keeping accounts.   In *Clancarty* v. *Latouche*, (1 *Ball & Beatty*, 420.) Lord Chancellor *Manners* inferred, from the tacit acquiescence of the party, an agreement at the end of every year, in favor of yearly rests, by which interest was made principal.   The usage was evidence that this was the mode of dealing intended.   Without, however, laying down any rule for the government of the Court hereafter, on this

172

point, there is enough in this case to hold these parties to the mode of settlement which has been adopted.

The remaining exceptions, on the part of the plaintiff, are only an amplification, *in extenso*, of this third exception, *that payments ought first to be applied to discharge the interest, and then to reduce the principal ; and, consequently, they all rest upon the same principle, and admit of the same answer. All the exceptions taken on the part of the plaintiff are, therefore, overruled.

I proceed next to consider the exceptions taken on the part of the defendant.

The first exception is, that the master, in taking and stating the accounts, has deemed the capital, which the defendant was bound to furnish, to be 9,015*l*. 17*s*. 10*d*., instead of 8,888*l*. 17*s*. 9*d*. In connection with this exception, and as a more full explanation of it, are the first and second *further* exceptions, in which it is objected that the master has deemed the sum of 208*l*. 17*s*. 9*d*., with which the defendant is credited, on the second of *April*, 1785, (being the premiums on certain bills of exchange, drawn for a part of the defendant's capital,) to be a part of the defendant's capital, whereas it ought to have been deemed to have belonged to the defendant individually, and was no part of his capital.

The premiums of these bills of exchange properly belonged to the company in whose favor they were drawn. The rate of exchange, whether it be gain or loss, falls on the creditor ; and yet, in this case, the gain is not credied to the company, but to the defendant, as part of his capital. This would apparently seem to be to the benefit of the defendant, and yet, I apprehend, it would have been more correct to have charged it, in the first instance, as the company's gain or profit ; and whether it be so charged, or as it stands in the report, becomes material only as to the interest charged in stating the accounts. But I am inclined not to interfere and disturb the whole calculation on account of this *item*, because it appears to me that the defendant comes too late with the objection. This difference of exchange was credited in the books as early as the second of *April*, 1785, as part of the defendant's capital, *and this application of these premiums has been acquiesced in to the date of the report ; though, in 1795, the question of the amount of capital of each party came under distinct consideration, and the deficiency of the plaintiff's capital was liquidated and settled at a sum in gross. It is impossible not to believe that the defendant was well acquainted with the actual appropriation of these premiums to his capital, and he has acquiesced in the mode of the appropriation, during the lapse of thirty years. It has, therefore, received a valid ratification.

1816.

STOUGHTON
v.
LYNCH.

A party cannot surcharge and falsify an account, unless on the ground of mistake or error, distinctly charged.

The second exception is, that the master, in eight different and specified cases, has charged the defendant with various sums of money, not at the times respectively at which the defendant is debited with them in the books of the firm, but at different times, and those long antecedent to the dates in the books. In respect to this exception, I admit the general rule, that you cannot surcharge and falsify an account, unless upon the ground of mistake or error, to be distinctly charged : but no such thing is attempted in this case. (See *Palmer* v. *Mure, Dickens,* 489. *Lord H.* v. *Vernon,* 4 *Vesey,* 411. and 1 *Maddock's Treat.* 82, 83.) The report is said to be supported in respect to the date of these charges, by the entries in the books, and the exception is resolved into an inquiry respecting the fact, and is to be determined by an inspection of the books.

The charges are all correct in point of date, or as to the time when the advance was made, or payment received. The books of the copartnership furnished, in every instance, the true date as charged. I have carefully perused the entries for the purpose, and have satisfied myself as to the fact. Though the entries were made at later periods, they refer back, in all these instances, to the time which has been taken. The exception goes only to the date of the charges, and fails in every instance. I presume, *and cannot but deem it proper, that in stating accounts between copartners, the true dates, as furnished by the books themselves, ought to be assumed. A regard to truth and certainty, in all dealings, would naturally lead to the adoption of this rule ; and I have greater confidence in the accuracy and propriety of this mode of stating the accounts, because I know it was done by the accountant to whom I have already alluded. It has been supposed, however, there is evidence that the parties intended that these charges should be considered and deemed to have arisen at the subsequent dates, when entries in respect to them were made ; but I have not been able to perceive that the books furnished the requisite evidence of such intention. The most plausible inference of this kind arises from the entries in *September,* 1794, relative to the cargoes of the *Jenny* and *Anthony;* and yet, on examination, it will be found, that those entries and liquidations had no reference to a settlement or adjustment of accounts between the present parties, individually, as copartners, nor as to the question of interest *between them.* The entries referred to a settlement, as to those voyages between the firm and others, and between the firm and the defendant, but not between the plaintiff and the defendant, as the two parties composing the firm; and therefore the entries afford no inference applicable to the case.

[ *218 ]

174

1816.

STOUGHTON
v.
LYNCH.

It is further to be observed, that this exception has strictly nothing to do with the question of interest, but relates only to the true time at which these charges are to be dated, from which interest (if any) is to be computed. The question of interest arises incidentally only, under this exception; though if it were not for the question of interest, it would be perfectly immaterial what date was assumed for the charges. If I could perceive, from the books, any certain evidence that the parties had ever come to any settlement in respect to their claims against each other, either as it concerned the charges or the interest, I *should be strongly disinclined to open or disturb it. Whenever a settlement, in respect to any precise charge or point, appears to have been made, I have uniformly felt disposed to respect it. But no settlement on the points now in discussion has taken place, and there is nothing to conclude either party: it is then perfectly just that interest, if it be computed at all, should be computed from the true time of the advance and payment. A subsequent entry of a charge, without mentioning interest, does not, of itself, conclude or estop a party from charging interest upon the final settlement of the accounts. This would be very unreasonable. It is no more a just ground of inference that the party had agreed to waive interest, than the entry of a charge for cash is a waiver of interest upon it, unless the entry then adds that the interest is charged. When the party comes to make out and exhibit his account, and demand payment, the demand of interest is to be made.

[ *219 ]

The sixth exception is, that the master, in stating the accounts, has made a rest on the 3d of *July*, 1795, and has allowed to the parties respectively interest from that period upon the balances then due.

The period here mentioned was the time of the dissolution of partnership, and that was, undoubtedly, the proper period to adjust the balance, and the party, who was then the debtor, became so, with obligation to pay, and is, therefore, justly chargeable with interest on such debt. It would seem to be very unreasonable, that the balance then truly due should be retained in his hands down to this day, free of all interest. I apprehend that this is the general practice, as well as the good sense of the thing, that a rest should be made on the liquidation and adjustment of accounts at the period of the final dissolution of the concern.

*The time of dissolution of the partnership is the proper period to adjust the balance between partners. Interest is chargeable on the balance then found.*

The eleventh exception is, that the master has reported that, from an examination of the allegations and proofs, he has ascertained that the plaintiff was not in possession of the store, mentioned in the pleadings, since the issue *joined in the cause on the 11th of *May*, 1808, whereas he

[ *220 ]

ought to have reported that the plaintiff was in possession jointly with the defendant.

The sixth further exception is only an amplification of this, viz. that the master did not find and report that the defendant executed a conveyance to the plaintiff of the moiety of the storehouse and lot. The report on this subject states, that it has not been found, on examination, that the defendant executed to the plaintiff a conveyance for an undivided moiety of the store and lot mentioned in the pleadings, or that the same was prepared or intended to be executed, or that the same was considered as executed, or that the parties have acted as though it was executed, otherwise than by executing, on the 25th of *January*, 1815, a deed of the same, in which there was a recital stating that a conveyance was executed by the defendant to the plaintiff of an undivided moiety of the said store and lot on the 1st of *February*, 1795. The report further states, that the deed was executed by the plaintiff without having been examined or read by him, and that an agreement between the plaintiff and the defendant, dated the 14th of *January*, 1815, was in evidence before him. The agreement above referred to, and signed by the plaintiff, recites, that the parties are seised in fee equally as tenants of the storehouse and lot; and *James Stoughton*, a witness for the plaintiff, states, on his examination, the circumstances under which the agreement was signed. He says, that an admission of the fact that such a deed from defendant to plaintiff was executed, had been drawn and signed by the plaintiff's counsel, without his knowledge or authority; and that the admission of the plaintiff to the same effect in the agreement above referred to, and founded on the admission of counsel, was obtained from him by his counsel, without any explanation, and under his ignorance of such an admission contained in the agreement. The witness further states, that the deed of the plaintiff *to *John Sudam*, of the 25th of *January*, 1815, was executed by the plaintiff without reading it, and was not in his possession except at the time of execution. In addition to this testimony, the defendant, in his answer to the bill, states, that some time after the dissolution of the copartnership, he proposed to the plaintiff to sell the store at private sale; that the plaintiff refused to consent to a sale by the defendant, and declared that in case the defendant should attempt to sell, as the fee was vested in him, (meaning, as I understand it, the defendant,) he, the plaintiff, would publicly forbid the sale. The bond of the defendant to the plaintiff, of the 20th of *June*, 1786, is another item of proof on this point, and it states, that on that day the plaintiff had sold to the defendant in fee a certain lot,

[ * 221 ]

176

and water lot; that the defendant was to permit the same to remain for the benefit of the copartnership, and that, after the termination of the partnership, he was to sell the same, and apply the proceeds as part of the stock of the company.

1816.

STOUGHTON
v.
LYNCH.

This is the evidence on the subject of title to the store; and, as to the possession of it, the evidence does not contradict, but confirms the report. The plaintiff was not in possession of the store, in point of fact, within the specified time: this he affirms in his examination before the master. In point of fact, the possession was in the defendant; and for the purpose of the question between the parties, as to the rent, the defendant is to be deemed in the exclusive possession; for he kept the key of the storehouse, and, of course, had the exclusive right and power of entering, and this too while the parties were carrying on this very litigious controversy against each other, on all their mutual rights and pretensions under their partnership concerns.

The proof of the title, and of exclusive possession in the defendant, is sufficient, unless the plaintiff is estopped by *the recital in the deed of 1815, stating that a moiety of the lot had been conveyed to him in 1795.

[ * 222 ]

The admission of counsel, to which I have referred, is to be placed out of consideration; for that was annulled by an order of the 30th of *June*, 1815, founded upon satisfactory proof, that it was signed under a mistake. The agreement signed by the plaintiff was founded on that admission of his counsel, and ought to fall with it, as being founded equally in mistake. The proof on this point is decisive; indeed, the agreement, by the terms of it, was not to affect the right of the plaintiff to charge the defendant with rent for the store, and, therefore, the recital contained in the agreement could not properly be used to the prejudice of that claim. We have only the recital in the deed of *January*, 1815, to contradict the proof of the whole legal title resting in the defendant. I am satisfied that the recital is not only not true in point of fact, but that its insertion arose from misapprehension and mistake, and was not distinctly understood or knowingly assented to by the plaintiff, at the time he executed the deed. It would then be very inequitable, and contrary to the policy of this Court, which has ample jurisdiction over the correction of mistakes in the most solemn instruments, to permit a recital, originating in mistake, and untrue in fact, to be now set up as a technical bar to the admission of the truth. There can be no doubt that the mistake contained in that recital might be corrected on a bill filed for that purpose; and it would be very unfortunate, and deeply to be regretted, if the Court, in the mean

Effect of a recital in a deed, not true in fact and founded in mistake.

time, with satisfactory proof of the mistake, was bound to give force to it on a question of evidence, merely under the notion of its being a dry, forbidding estoppel. I am not disposed to push the common law doctrine of estoppel to such a rigorous extent.

[ * 223 ]

With respect to the further exceptions (as they are *termed) on the part of the defendant, the 1st and 2d of them have already been considered.

The fifth further exception is, that, on the 3d of *July*, 1795, and at divers times previous thereto, the master has charged the defendant with divers sums, amounting to 9,819*l*. 19*s*. 5*d*. for interest on moneys received by him from the copartnership funds.

The charge of interest was in pursuance of the decree of the 6th of *July*, 1814, and is made upon moneys drawn out by the defendant, beyond what was necessary for his private expenses; and, as I have not hitherto had any reason to doubt of the correctness of that decretal order, I am not disposed to accede to this exception.

The conclusion is, that all the exceptions on the part of the plaintiff, and all the exceptions on the part of the defendant, except the third further exception, and the interest on the 600*l*. mentioned in the fourth further exception, are disallowed. With respect to the question of costs, arising on these exceptions, I am disposed to charge the parties respectively with the costs of the exceptions taken by them and disallowed; and with respect to the two instances, in which the exceptions taken by the defendant have prevailed, the sums in controversy were small, and the mistake such as the master would probably have corrected, if the objection had been made to him, and only a small part of the fourth exception was well made; and, therefore, I think it would not be reasonable, that the plaintiff, in respect to them, should be charged with the expense of an argument; and I shall not allow any costs on either side, as to the third and fourth further exceptions.

The report states, that the master has ascertained what would have been a reasonable rent for the store, for each year, since the exhibition of the bill on the 12th of *July*, 1805, to the first of *January*, 1815, and the exhibit (I.) annexed to the report, contains the sums. The rent, I am of opinion, ought to be charged to the defendant: the store,

[ * 224 ]

*by the agreement of the parties, was to be appropriated for the common benefit, and if the defendant thought proper to keep the possession of it himself, and under his control, the consequence of his negligence ought not to fall upon the plaintiff; but, under the circumstances disclosed, I am not disposed to charge him with any more than the sums

178

reported for rent, without interest; and in all these respects, the report must be recommitted to the master for correction.

1816.

Codd
v.
Codd.

N. B. The report was sent back to the master, to make the alterations and corrections, pursuant to this decree; and, on the 31st of *October*, he made a further report, which was read, and an order for its confirmation made absolute, and thereupon a final decree was entered. By this last report, the master found a balance of 25,076 dollars and 64 cents due from the defendant to the plaintiff.