McGIBBON et al. v. TARBOX.

(Supreme Court, Appellate Division, Third Department.   May 16, 1911.)

1. PARTNERSHIP (§ 255*)—DEATH OF PARTNER—CONTINUANCE OF BUSINESS BY
     SURVIVOR—RIGHTS OF DECEASED'S HEIRS.
          Where, after death of a partner, the survivor continued the business,
     in the same firm name, for the benefit of himself and deceased's fam-
     ily, the latter, in the absence of agreement, could demand interest on
     their share of the capital or the profits earned by it.
          [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 557; Dec.
     Dig. § 255.*]

2. PARTNERSHIP .(§ 255*)—DEATH OF PARTNER—CONTINUANCE OF BUSINESS BY
     SURVIVOR—ALLOWANCE FOR SERVICES.
          Where, after death of a partner, the survivor continued the business,
     in the same firm name, for the benefit of himself and deceased's family,
     the latter, electing to share in the profits, can share only in the net
     profits, after a fair allowance to the survivor for his disbursements and
     services.
          [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 559; Dec.
     Dig. § 255.*]

3. PARTNERSHIP (§ 255*)—DEATH OF PARTNER—CONTINUANCE OF BUSINESS BY
     SURVIVOR—WITHDRAWALS—APPLICATION.
          Where, after death of a partner, the survivor, whose share of the as-
     sets then exceeded those of deceased, continued the business in the
     same firm name, for the benefit of himself and the family of deceased,
     the excess of the amount drawn by him from the business during such
     continuance over the amount drawn by them should not be treated as
     a withdrawal of his excess capital, but as applicable on the amount to
     which he was entitled for his services and the use of his store in the
     business.
          [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 559; Dec.
     Dig. § 255.*]

4. PARTNERSHIP (§ 255*)—DEATH OF PARTNER—CONTINUANCE OF BUSINESS BY
     SURVIVOR—ALLOWANCE FOR EXCESS CAPITAL.
          The survivor, at the death of a partner, having been entitled to the
     greater share of the assets, and having continued the business for the
     benefit of himself and deceased's family, was entitled to interest on his
     excess of capital, or to a proportionally greater share of the profits.
          [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 559; Dec.
     Dig. § 255.*]

          Betts, J., dissenting.

     Appeal from Judgment on Report of Referee.

     Action by Ellen J. McGibbon and another, administrators de bonis
non of Belfrage McGibbon, deceased, against Edward B. Tarbox, as
survivor of the late firm of McGibbon & Tarbox.   From a judgment on
the report of a referee for plaintiffs and against defendant for $1,-
858.69, defendant appeals.   Modified and affirmed.

     Argued before SMITH, P. J., and KELLOGG, SEWELL,
HOUGHTON, and BETTS, JJ.

     Wesley Gould (Alexander Neish, of counsel), for appellant.
     Wagner & Fisher, for respondents.

     SMITH, P. J.   This action is brought by the administrators of Bel-
frage McGibbon against Edward B. Tarbox for an accounting.   In

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1873 McGibbon and Tarbox entered into partnership in the hardware business. On September 1, 1884, McGibbon died. At that time an inventory was taken of the stock, which disclosed the interest of McGibbon at his death to be $4,275.85, and the interest of Tarbox to be $6,332.72. At his death McGibbon left a widow and three children. The widow was the sister of the defendant and lived in his family. After some family consultation, and by the advice of an attorney, the defendant continued the business in the same firm name for the benefit of himself and his sister and her family until the 1st of March, 1906, at which time the youngest child became of age. At that time an inventory disclosed assets of the value of $9,303.48. During that time Mrs. McGibbon had drawn for her family the sum of $13,182.69, and the defendant had withdrawn $15,022.64. The referee has charged the defendant with the final inventory of $9,303.48, has credited him with store rent to the amount of $1,137.50, and has allowed him the further sum of $4,544.50 for his personal services during that time. He has treated the amount of moneys drawn by the defendant in excess of the amount drawn bv the McGibbon family as withdrawals of excess capital. But this amount withdrawn still left $216.92 as excess capital, with which he has credited the defendant, which leaves a balance of $3,404.56, which he calls the net assets of the firm for division in this action. From this sum he has directed that the plaintiffs' and defendant's costs should be taxed and adjusted and paid. It seems that $250 has been paid to Clara McGibbon. By his fifth conclusion of law he directs:

"That to the balance then remaining shall be added the sum of $250 paid to Clara McGibbon by the defendant, and the aggregate divided in two equal portions, one-half of which, less the said sum of $250 shall be paid to the plaintiff in this action, and the other one-half, plus the $250 paid to the defendant in this action."

The plaintiffs' costs were taxed at $628.77, and the defendant's costs at $100, leaving in the hands of the defendant for division the sum of $2,709.83. Add to this $250 paid to Clara McGibbon. The result divided by two makes the sum of $1,479.92. From this deducting the sum of $250 there remains the sum of $1,229.92, which the defendant was directed to pay to the plaintiffs in addition to their costs of the action.

In Robinson v. Simmons, 146 Mass. 167, 15 N. E. 558, 4 Am. St. Rep. 299, the headnote in part reads:

"The representatives of a deceased partner, whose capital is used by the surviving partner in the business, may generally, if there is no agreement, elect to demand either interest on such capital or the profits earned by its use. A surviving partner, who in good faith continues to use in the business his deceased partner's capital with the consent of a majority of his heirs, is entitled to compensation for his skill and services out of the profits earned by it; and the latter's representatives will take only such profits as then remain."

At page 176, 146 Mass., and page 563, 15 N. E., 4 Am. St. Rep. 299, the opinion reads:

"The plaintiffs contend that in this case the rule should be that the profits accruing after the death of the intestate should be divided according to the

amount of capital which each partner or person interested had in the business, and that no compensation or allowance should be made to the surviving partners for their services and skill in conducting the business. We do not think that this rule is supported by the authorities, or is just as applied to this case."

In the same opinion it is stated:

"There is, however, no inflexible rule governing all cases, but each case depends upon its own circumstances and equities."

[1] Under this rule, the plaintiffs have the option either to demand back the sum invested with interest less the amounts that had been received or to charge the defendant with their proportion of the profits in lieu of interest. Inasmuch as the profits have exceeded what the interest would amount to under the legal rate, plaintiffs have elected to demand the profits instead of simple interest. [2] Under that election, however, plaintiffs are entitled only to their share of the net profits after a fair and equitable allowance to the defendant for his disbursements and services. The referee, therefore, properly allowed him for the rent of his building and for his services. [3] The amount of moneys withdrawn by the defendant in excess of those withdrawn by the estate has been treated by the referee as a withdrawal of so much excess of capital which the defendant had in the business at the death of McGibbon. During all this time, however, the defendant was contributing his services and the use of his property to the value of over $5,000, as found by the referee. It is fair, therefore, that this withdrawal of $1,839.95 in excess of the withdrawal of moneys by the estate should be deemed applicable to reimbursement to him to that extent for services rendered and for the use of his property, and should not be deemed a withdrawal of excess capital.

[4] The defendant then at all times had in the business $2,056.87 of capital in excess of the capital invested by the estate. For this excess of capital the referee should fairly have allowed the defendant some compensation. If interest be allowed upon such excess for the period of 21½ years, it will amount to $2,653.31. This would seem to be warranted under the Robinson Case, supra. One of my colleagues insists that interest cannot be allowed to a partner on excess capital except by specific agreement. Within the Robinson Case, supra, as well as within the authorities cited in support of this proposition, if interest be not allowed, proportional profits may be allowed, which in this case would be greater than simple interest. The plaintiffs cannot complain, then, if the rule more favorable to them be applied to the case, and they be charged with simple interest upon the excess capital which the defendant had in the partnership. Deducting from the services and rent of the store allowed by the referee the excess amount withdrawn by the defendant, there remains still due to the defendant for his services and for rent the sum of $3,842.05. The excess capital of $2,056.87, together with the interest thereon, $2,653.31, amounts to $4,710.08. This, with the amount remaining unpaid for his services and rent, makes the sum of $8,553.23 to be paid to the defendant from the assets before the plaintiffs have any interest therein. This leaves for distribution after the debts of the concern are

paid $751.25. In this way the defendant loses $250 which he advanced to Clara McGibbon, unless he is able to collect the same from her. The $751.25 should be used first to pay the defendant's costs as taxed and thereafter to apply upon the plaintiffs' disbursements and costs as taxed.

As this result rests upon facts already found by the referee, the judgment should be modified in accordance with this opinion, and, as so modified, affirmed without costs to either party. Judgment to be settled, upon notice, by SEWELL, J.

Judgment modified, as per opinion, and, as modified, affirmed, without costs to either party. Judgment to be settled, upon notice, by SEWELL, J. All concur, except BETTS, J., who dissents in opinion.

BETTS, J. (dissenting). I cannot agree with the opinion of SMITH, Presiding Justice. I think that the report of the referee and judgment entered thereon was as favorable to the defendant as the facts would justify.

The original copartnership was formed in 1873 with a capital of $3,680, of which each contributed one-half. The defendant attempted to, and did, continue that business with the firm assets as they were at the time his partner, Mr. McGibbon, died. At that time there was an excess of money or property in the firm from what there was at the time that the business was started, and some more than when the surviving partner closed the business in 1906 and took unto himself all that was left of stock and capital and otherwise. The defendant did not pretend in any way that the additional interest that he had in the firm in 1884 was in any way a loan by him to the copartnership. It was not. It was simply permitting the business to remain as it was. There was no one in existence who could authorize him to loan that amount of money to the firm, and, if he chose, he could probably have taken that amount out and equalized the shares. At any rate, he did not do it. He did loan to the copartnership or to himself as survivor his individual money at different times and took interest for some loans.

It is held in Rodgers v. Clement, 162 N. Y. 422–425, 56 N. E. 901, 76 Am. St. Rep. 342:

"If the moneys advanced by the plaintiff to the firm were contributions of capital or additions to plaintiff's capital, then he was not entitled to interest on the same, since he must rely upon the profits of the business to compensate him for the investment, unless there was a special agreement between the partners that interest should be allowed. Johnson v. Hartshorne, 52 N. Y. 173; Jackson v. Johnson, 11 Hun, 509, affirmed 74 N. Y. 607; Sandford v. Barney, 50 Hun, 108 [4 N. Y. Supp. 500]; In re James, 146 N. Y. 106 [40 N. E. 876, 48 Am. St. Rep. 774]; Cheever v. Lamar, 19 Hun, 130; Stoughton v. Lynch, 2 Johns. Ch. 209; Collyer on Part. § 318; Lindley on Part. 389. But, on the other hand, if the moneys so paid or advanced by the plaintiff for the use of the firm were in fact loans, and the plaintiff as to such advances was a creditor of the firm, he stands upon the same footing as any other creditor with respect to the right to be allowed interest upon the accounting. A partner may loan money to the firm of which he is a member, and, when he does, his right to interest is to be determined in the same way as that of any other creditor. In such cases the general rule is to allow interest upon the advances, although there was no express agree-

ment by the firm to pay it, in the absence of some agreement to the contrary, express or implied. The right to interest or an agreement to pay or allow it is to be implied in such cases without any express promise, as in like transactions between parties holding no partnership relations to each other."

The difference between the amounts belonging to defendant and plaintiffs in the firm property at the time of the death of Mr. McGibbon had substantially disappeared at the time that the defendant without any one's consent took the entire stock and assets of the firm and the referee has allowed him sufficient to make it equal. Substantial equity seems to have been done in an awkward situation by the referee.

I think the judgment should be affirmed, with costs to the respondents.