## WILLIAM R. COLGIN *vs.* JOHN O. CUMMINS.

### *Error from Tuscaloosa Circuit Court*—Before the Hon. A. CRENSHAW.

————

Where matters in controversy have been referred to commissioners, by a chancellor, and on appeal, it appears that exception to any special matter has not been taken before the commissioners, this will not bar the right to the exception in the appellate court.

The surviving partner of a firm, will not be allowed to claim and retain against the representative of his deceased partner, any compensation for mere personal services in winding up the affairs of the firm.

Annual rests in the individual accounts of such partners, so as to authorise interest on the balances of the largest account, are not allowable, where it does not appear that the surviving partner has turned such balances to profit. As a general rule, equity will not admit a claim as a set off, which cannot be available in a court of law.

William R. Colgin, the administrator of Irby, filed his bill in equity to compel John O. Cummins, the surviving partner of Irby & Cummins, to account for the effects of the intestate Irby. The bill, answer, and exhibits, show the following facts.

John T. Irby and the defendant, Cummins, associated themselves in trade, as copartners in the year 1824. They continued to carry on a mercantile firm until the year 1827, when Irby died. The defendant Cummins, as surviving partner, continued to carry on the business of the firm, and eventually became the purchaser of the entire stock in trade. Colgin as administrator of Irby, having filed his bill to compel a settlement of the partnership transactions, a reference was made to commissioners of all the matters of account subsisting between the parties. On the report of the commis-

sioners, a decree was rendered by the court below, to revise which both plaintiff and defendant assign errors in this court.

The material assignments involving the decision of this court, are the following :

1. That the chancellor overruled the exception of the complainant to the report of the commissioners, taken to their allowance to Cummins of eight hundred dollars, (besides all other expenses) for his services in winding up the affairs of the firm after Irby's decease.

2. That the chancellor overruled the exception of the complainant, taken to the refusal of the commissioners to make rests in the individual accounts of the partners ; and to charge interest on the balances of the largest account.

3. That the chancellor overruled the exception of the complainant, taken to the allowance by the commissioners of a moiety of losses on cotton, occurring after the death of Irby.

4. That the chancellor erred in not allowing to the defendant Cummins. the amount of a due bill executed by Irby to one Comegys, and by him transferred to the defendant.

5. That the chancellor erred, in decreeing any portion of the costs against the defendant.

By Mr. Justice THORNTON :

The bill was filed in this cause by Colgin, the administrator of Irby, against defendant, Cummins, who was surviving partner of the firm of Cummins & Irby, and John T. Irby & Co. ; the object of which, was a settlement and recovery from the said Cummins, of the share of the partnership effects in his hands, due to him the said Colgin, as administrator as aforesaid. Upon the answer of the said Cummins, admitting the partnership, &c. a reference was made to commissioners, of the matters of account arising in the cause, whose report was the basis of the interlocutory and final decrees made by the court below. Upon the final decree, both parties ap-

Colgin
vs.
Cummins.

pealed to this court, and the assignment of errors by both, is by consent, argued, and to be determined together.

We will first consider the errors assigned by complainant, Colgin, which are three in number.  1st. That the chancellor overruled the exception of the complainant to the report of the commissioners, taken to their allowance of eight hundred dollars, over and above the allowance for other *expenses* to Cummins, for his services in behalf of the firm, after the death of Irby.  To the competency of the complainant to assign this error, the defendant, by his counsel, objects ; because he says that the *exception*, the overruling of which is the subject of assignment, does not appear to have been taken by him, whilst the matter was before the commissioners, and before they signed their report.  As to the preliminary question, the court, I understand to be unanimous in their opinion, that it is competent to the complainant to make the assignment, though we arrive at that conclusion by different processes of thought.

My own conclusion rests upon this view of the matter.— We have a statute,[a] touching this subject of reports on a reference of matters of account out of chancery, and the manner of appealing or accepting thereto ; under the discretionary power conferred, in which the chancellor below acted, when he substituted the commissioners, who made this report, for Mr. Jenkins, the clerk of the court.  The report in this case, when returned, was appealed from to the chancellor, and the *grounds* of the appeal, or exception distinctly set forth, were served upon the attorney of the opposite party, and by him *accepted*, traversed, and argued, which being in conformity with the practical construction put upon this act, I feel disposed to recognise as a correct and safe course of practice. This obstacle to the consideration of the assignment being removed, I will proceed to the question involved in it—which is, whether a surviving partner, without any stipulation to that effect in the articles of copartnership, can be allowed to claim and retain, against the representatives of his deceased part-

[a] Aik. D. 288, 289, s. 22.

ner, any compensation for his personal services, in winding up the concerns of the firm.

Colgin
vs.
Cummins.

Before entering upon this question, it may not be unprofitable to ascertain, and bear in mind, the nature of this partnership—the rights and duties imposed upon the parties by the original compact—and the true character of the personal service, for which compensation was allowed.

By the contract here, the parties covenanted to devote their time and attention, exclusively to the mercantile concern, in which they were about to embark; and stipulate, upon its dissolution, (after allowing to either any capital which he might bring into the concern) for an equal division of all the firm effects. The dissolution took place by the death of Irby. The immediate consequence of that event, was the devolution upon Cummins, of the right, and the duty, to do every act, and only such, as was necessary to the winding up of the concern. The payment of all debts due from the firm—the collection of all due to it—the conversion of all property into money—the creation of no new demands against the effects, except for necessary purposes—and finally, a fair division and allotment to the representatives of the deceased, seem to comprise the lawful rights and duties of the survivor in this partnership,[a]—and Cummins, so far as this record discloses, seems only to have pursued, without any material deviation, this line of conduct. The sale of the stock of goods, at private sale, until January, 1828, and the purchase by himself of the balance, at auction, being for their reasonable value, would not be considered as a departure; and derived no additional validity, except as it tended to show fairness of intention, from the consent of Colgin, who was not then the representative of the deceased partner.

[a] 15 Ves. 218, Crawsby and Collins..Gow on Part. 253.

Having thus premised, so far as I deem important to the consideration of the question of the allowance of compensation, I now enter upon it, not so much with a view to maintain the doctrine I shall declare, by my own speculations of what the rule ought to be, as to show by the authorities, what it is.

Colgin
vs.
Cummins.

If, however, it was my privilege *jus dare*, instead of *jus dicere*, I do not know that I would settle it differently. According to my apprehension, the chain of authorities, (I will not say the unbroken chain, for I have not enjoyed the means of a sufficiently extended search into the books, so to say,) is adverse to the allowance.

Much of the argument of counsel, addressed to the court upon this point, was drawn from the supposed analogy of executors and administrators, and ordinary trustees created by deed, to this case of a surviving partner. With regard to the three former, the rule of the English Chancery, without exception, seems to deny them compensation. And this rule is illustrated by adoption of *Chancellor Kent*,[a] in the case of *Manning* vs. *Manning*. To this formidable array, is opposed numerous American jurists in different states, and the custom which has universally prevailed in our own, without reprehension from any judicial tribunal, though no statute authorises the allowance. Now I do not feel called upon to adopt either the one or the other of these conflicting opinions. Whenever that question shall come up let it be decided : but my decision of it one way or the other, would not conclude my determination of the present point.

al Johns. Ch
Rep. 536.

This is not the case of an executor, or administrator, or of a trustee undertaking to execute certain acts of charity, or kindness, all of which relate, as now existing, at least, to the voluntary transactions of other people's affairs. I say, as now existing, for anciently, as to executors and administrators, that class of trustees could not properly be said to transact only business for others, as before the statute of distributions, the residue of the assets of the deceased, after payment of debts, was their own. It is the case of a man whose rights, and whose duty too it is, in consequence of his property being mingled by his own act, with that of another, to take care of it, and to do certain acts in relation it, for his own and that others' interest, until a separation is made, which, in contemplation of law, can only be done by his own

action. Every act which a surviving partner can lawfully do, is emphatically for himself; so much so, that he could refuse to the representative of the deceased, any participation in it. If upon examination, the current of authorities sustains the position, that a surviving partner, is not to be allowed, except an indemnity for actual expenditure, I would not feel authorised to abandon it, because a preponderance of authority is in favor of such allowance to executors, administrators, and trustees generally, other than surviving partners. Nor would I be concluded in relation to the case of executors, administrators, and trustees generally, having no interest in the subject matter of the trust, by refusing compensation to a surviving partner, for his time and labor in winding up the business of the firm, in which his interest, by his own act, has been complicated for purposes of advantageous traffic, with that of another. Leaving then, the debated ground, of trustees generally, who have no interest in the trust, without adding my own opinion to one side or the other, I will briefly advert to the authorities in relation to the case of a surviving partner, which are none other than those produced in the argument, by the commendable industry of the counsel concerned.[a]

The doctrine is laid down in the following words: "A surviving partner, where there is not an express stipulation to that effect, is not entitled to charge in the account, a sum of money, as a compensation to himself for his management of the trade, and for his time and labor," &c. The only case referred to by this elementary author, in support of the text, is that of *Burden* vs. *Burden*,[b] in which the point was fully made, and solemnly decided.

The editor of the edition of *Gow*, to which reference was made, appends various additional authorities to the same point; which, so far as opportunity was allowed me to inspect, I have examined, and find corroborative of the position. The authority of the last case referred to, above, is

*Colgin
vs.
Cummins.*

[a] Gow on Par. 381.

[b] Ves &Beam 170.

contended by the counsel for Cummins, to have been destroyed, by a decree subsequently pronounced by the same chancellor, in the case of *Brown, adm'r of Mongin* vs. *De Taffitt.*[a] I have examined the latter case with all the attention which its supposed import was calculated to demand, and cannot assent to the conclusion drawn from it by the counsel.

It would indeed, be a fact somewhat remarkable, to say the least of it, that a chancellor, and that chancellor *Lord Eldon,* should have thus overruled the doctrine, which he himself has solemnly declared, without even adverting to his former adjudications.    But I do not think he has done so.    In the last decree which the report of this case discloses, a reference is ordered to the master, directing him to permit such claims for the *management, transacting, and carrying on of the business* to be submitted to him, as the surviving partner was advised he ought to have ; and directing him further, to state the facts and reasons, upon which he shall have adjudged any allowances to be just allowances, if on behalf of plaintiff he shall be requested to do so ; and state the facts and reasons, upon which he shall adjudge any allowance prayed not to be just, if he shall be requested by defendant so to do.

It is not apparent from the case, what was the nature or extent of the allowances contemplated ; for the chancellor expressly says, in answer to an objection to a former order, making allowance to De Taffitt, for his personal services and credit—page 140, " I do not mean to intimate whether the master should allow wages or compensation ; but it cannot be denied, that if the business be such, that on the death of the party, other persons are concerned in aiding it, by the application of their skill, their services, and their money, a great deal may be included under the head of just allowances, which till the master has thoroughly sifted it, the court cannot determine." The vice chancellor's order, commanding the master so to take the account, as to show what was reasonable compensation for the personal services and attention of survivor, was reversed by the chancellor, and another account

ordered, as above stated, which should disclose the grounds
upon which any allowance claimed, should be either admitted
or rejected by the master.   If I were to concede that the al-
lowance here contemplated by the chancellor, was for the
personal services of De Taffitt, and not for those of other
persons who were also engaged in the transaction of the bu-
siness, carried on with the funds of the deceased ; yet the
facts of the case are so variant from those of *Burden* vs. *Bur-
den*, and of the case before us for adjudication, that the con-
cession would not be material.   The business in that case,
was a dealing upon money and bills of exchange, and was
*carried on* by making *new adventures* on the funds, after the
death of Mongin ; in which case, his representatives might
either have claimed the money of the deceased, with inter-
est,[a] or his share of the profits made by the use of that mo-
ney ; and if the whole profits were claimed, as was the case
of Mongin's representatives, the question would well arise,
whether allowance should not be made to all, who by their la-
bor and skill, wielded the fund, so as to make it productive
of the profits claimed.   An allowance for the personal servi-
ces of De Taffitt, would not be at all decisive in favor of an
allowance of that character in the case before us ; in which,
like that of *Burden* vs. *Burden*, the only business done after
the dissolution, was such as was necessary to winding up the
concern.   I shall advert to but one more authority on this
point, which is the case of *Wilbey* vs. *Finney*.[b]   The opinion
of the court, though it seems profits were made, as in *Brown*
and *Detastit*, by carrying on business after dissolution, only
recognises the justness of the claim, by the surviving part-
ner, to compensation for *expenses*, which is not disputed to be
correct, and is allowed in the report before us, and without
any exceptions being now urged against it.

The second error assigned, is, "That the chancellor over-
ruled the exception to the report, taken to the refusal of the
commissioners, to make rests in the individual accounts by
the partners, and to charge interest on the balances of the

Colgin
vs.
Cummins.

[a] Gow on Par.
381, and au-
thorities there
quoted.

[b] 15 Mas. Rep

largest account." I do not think there was any error committed by the chancellor in the particular here brought to view ; interest upon an open account is not reasonable, as a matter of strict right, unless agreed to be paid ; it is often allowed by juries, and decreed by chancellors, in the nature of damages, for the detention or withholding of money ; but in all such cases, there is an evident default in the party charged with it ; or if a profitable use be made of it, though there be no default in the persons holding the money, interest is equitably chargeable, as in the case of executors and administrators, who are not, by our law, chargeable with interest on money, unless they have turned it to profit.

The particular objection urged here, is, that the account was not so taken as to charge interest throughout the existence of the partnership, by making rests at the end of every year. It seems to my mind, that such was not the understanding of the parties, or else they would so have kept the account, which by the commissioners' report, was not so kept ; therefore, there is no foundation to charge interest on the ground of an agreement to pay it on this annual balance ; nor does it appear, that on the other grounds suggested, interest is chargeable. If it had been shown by proof, that more was drawn out than was necessary to the support of the party, sought to be charged with interest, on the balance against him, then I should think there would be a fair ground in equity to charge him, but not otherwise.[a]

[a] 2 Johns. Ch. Rep. 219.

If the assignments were so extended as to embrace every question respecting interest, growing out of the report, with my views of the rights and duties of the surviving partner, and of the whole case as it appears upon the record, I could not say that there was any such default in him, in withholding any funds, or any such turning of any of them, to his own profitable account, as would make him in equity, liable to the payment of interest.

The third and last assignment of error, on the part of the

complainant, relates to the allowance by the commissioners, of a credit for loss on sale of cotton.

Upon inspecting the report, we find the cotton on which the loss accrued, to be stated as the property of the firm, and the evidence of that fact, as well as of its loss, though not disclosed, must now be presumed to have been satisfactory to the commissioners. According to the agreement before mentioned, argument was also had, upon assignment of errors by the defendant, Cummins, who also appealed from the final decree. The first error assigned by him, was the disallowance and set off, against the amount decreed to be due, and payable from him to the complainant, a note or due bill, executed by deceased partner to witness Comegys, and by him transferred for valuable consideration, to the defendant, subsequently to the death of complainant's intestate, and also to the institution of the suit by him against the defendant. The allowance of the set off here claimed by the defendant, is resisted on a variety of grounds. I do not deem it necessary to notice them all, as there is one view of the subject which satisfies me, that the decree was correct, in repudiating it. It is conceded that this claim would not be allowed, as a set off in a court of law, if acquired after the institution of the action, on the principle, that the rights of the parties must abide as they were at that time. I will not undertake to say, that in chancery, a set off will in no case be allowed, which was procured by the defendant after service of the subpœna ; for however it may be as to the mere question of jurisdiction, or under what circumstances the defendant may be permitted to urge an acknowledged set off, certain it is, that a court of equity follows the same general rules as a court of law, respecting the nature of the set off.[a]   The obvious principle to which I have alluded, as applicable to the question, certainly prevails equally in either forum, and cannot be obviated by any supposed condition of the estate of the deceased partner, as it respects its solvency or insolvency. It is thus that the rights of all creditors of a deceased debtor, must continue as

a 3 Johns. Ch.
Rep. 358.

they were at the time of his death, and that no transfer can be made so as to vary, by any probability, the rateable proportion in which his assets are to be applied to the discharge of his debts.   During the life of a debtor he may exercise his preferences among his creditors, but after his death there is no distinction, except such as is made by law.   By allowing a set off, acquired in the manner in which this was, the legal rights of creditors are put in jeopardy, and the duty of administrators, as prescribed by law, is implied, at least, if not wholly defeated.   The portion of the deceased partner, in the hands of the survivor, constituted a great part, if not the whole of the assets of the complainant's intestate.   The creditor Comegys, in this case, through the instrumentality of the defendant, has his claim paid out of the assets of the deceased, before the administrator has ever received them into his possession, or even known their amount.   I feel satisfied there was no error in rejecting the set off.   The second error assigned by the defendant, was that the costs were divided between the parties.   In this we all concur, that there is no error, at least we do not feel disposed, on that ground, to disturb the decree.   As the result of our deliberations upon the several errors assigned by both parties, the majority of the court concur in the decree given.

By Mr. Justice SAFFOLD :

The merits of the controversy may be resolved into the following questions.

1st. Was Cummins entitled to compensation, for his services in continuing and closing the business of the firm, after the death of the partner, or only for his expenses actually incurred?

2d. Was it legal and proper that annual rests should have been allowed on the balance appearing to have been due from the surviving partner, more than was due from the deceased partner, on their individual account with the firm?

3d. Ought the loss on the cotton, purchased and sold, to

have been allowed by the commissioners as a loss of the firm, or of the surviving partner alone ? .

4th. Was the individual note of Irby, procured by Cummins after the institution of this suit, a proper set off for allowance by the commissioners ?

5th. Should the costs of the suit have been decreed against the defendant, or should they have been charged against the effects of the firm, as directed by the final decree ?

My remarks will be directed mainly to the first point, as on that alone, my views materially differ from those of the majority. The regular business of the firm, by selling the goods, &c. at private sale, appears to have been continued by Cummins, as surviving partner, only a few months. The circumstance of this having been consented to by the father in law, and who has since been appointed administrator of the deceased partner, and by Comegys, one of the distributees of his estate, together with the situation of the concern at the time, which is admitted to have justified the course, is satisfactory to me, as respects the propriety of thus continuing, and the motive which prompted the surviving partner to it. His right to compensation for the service, in continuing the sales, and closing the business, is contested ; it is insisted, that neither a surviving partner, an executor, administrator, or any trustee, is legally entitled to compensation for his services in the management of the business, unless provided for by agreement.

In support of this position, reference is made to various authorities, which clearly sanction the doctrine, especially in the case of executors and administrators, and trustees, appointed by ordinary grant. Contrary authorities are also cited, some of which are directly applicable to the present case. It therefore becomes necessary, briefly to collate a few of them on either side, examine the reasons of them, and determine the preponderance.

In *Franklin* vs. *Robinson*,[a] it was ruled by the chancellor, that joint owners and partners, are not entitled to charge

Colgin<br>vs.<br>Cummins.

[a] 1 John. Ch. Rep. 157.

each other for services rendered in the care and management of the joint property, unless there be a special agreement for that purpose. The language of all decisions is to be understood with reference to the facts of the case, and when the facts there presented, are taken into consideration, the principles of that decision are very clear and rational.

The parties were all living, each performing the duties assigned them relative to the concern, and the party whose compensation was in question had acted under a special agreement, by which he was to receive ten thousand dollars for his services, on a certain event, which never happened. The remarks of the chancellor are these, " It seems to be inconsistent with the object and intention of the parties in making the contract, to allow the defendant to recover on a *quantum meruit*, merely because the contingency had not occurred on which the extraordinary and specific allowance for the same services, was made to depend." Again, he says, " each joint owner, in taking care of the joint property, is taking care of his own interest, and the law never undertakes to measure and settle between partners their various and unequal services bestowed on the joint business. This must be left to be regulated by contract." This language clearly applies to the attention which may be bestowed on the joint or partnership interest, pursuant to the original undertaking, and which, by implication, excludes the allowance. But it is worthy of inquiry, whether the happening of an event, not contemplated by the parties, which throws the whole burthen on one, and even deprives them of the power to stipulate an agreement, as in case of death, does not vary the principle. On this point several authorities will presently be noticed.

In the case of *Green* vs. *Winter*,[a] a deed of trust had been executed to Winter, of bonds, mortgages and land, with directions, and under an agreement, that he should execute the principal object of the trust, which required that he should take upon himself some responsibilities, and make some advances of money; then, that " upon payment of such sums

of money as might justly be due to him in relation to the execution of the trust, or that he might advance or become liable for," he would convey the lands to a particular person— also that he would assign the bonds, &c. or such securities as might remain " after his said advances and responsibilities were secured and satisfied. On the question, whether the trustee should be allowed a counsel fee, and other compensation for his services, the court ruled otherwise, and said the trust was a voluntary undertaking for the benefit of the *cestui que trust*; that the trustee was entitled to an indemnity for his expenses and responsibilities, incurred in the due and faithful execution of the trust ; but he could not demand *compensation* beyond what might be founded on the positive agreement of the party ; that the declaration of trust contained no stipulation or provision for such compensation ; that it was cautiously worded throughout, and spoke only of allowances for all his " advances and responsibilities ;" that the trustee could not, therefore, charge any thing more than what was understood in the language of the court, by "*just allowances*." The court rejected, not only the five hundred dollars counsel fee, as a general retainer, but also, all charges for commissions. In this case, also, it should be observed, there was no unforseen event happening after the creation and acceptance of the trust, increasing or varying the duties of the trustee, from such as were originally contemplated. The declaration of the trust expressed a degree of remuneration or indemnity, which implied an exclusion of compensation or other allowance, and on these terms the duties were voluntarily undertaken, for the benefit of *cestui que trust*.

The case of *Manning* vs. *Manning*,[a] involved the right of an *executor* to *commissions*, or compensation for his services in the execution of his trust. The chancellor applied the same doctrine as mentioned in the former case, to this, without the aid of any expression in the will to exclude the allowance, but on the ground that such was the well established principi-

[a] 1 John. 157.

21

Colgin
vs.
Cummins.

ple of the common law—that it was so held in the English courts; and there being no statute to the contrary, it had been adopted in New York, and the courts were incompetent to vary it. Yet, in sustaining the principle, he relies mainly, on considerations which are not equally applicable to the case of a surviving partner, or even to an executor in this state. He says, " Nor does the rule strike me as so very unjust, or singular and extraordinary ; for the acceptance of every trust is voluntary and confidential." Again, he says, " it is more proper in the case of *an executor*, who gives no security," &c. I think it is not true that a surviving partner *voluntarily* undertakes to close the interest of his deceased partner : without his consent he is subjected to the legal compulsion ; suits that become necessary can only be in his name, and the whole adjustment of the concern must be by him, his agent, or other legal representative. As respects executors and administrators, in this state, both are required to give security. In England, executors are not ; and it has been much more usual there than here, for the testators to compensate them by residuary legacies, in which law and usage the rule is presumed to have originated. That the rule has obtained in England, as asserted and adopted in New-York, in relation to trustees generally, must be conceded. The authorities are so numerous and clear on this point, that it is unnecessary to refer to them. I will notice, however, some other reasons assigned for it, than these mentioned, that we may the better judge of their force and application, to either surviving partners, or executors and administrators, in this state.

a3P.Williams
249.

In *Robinson* vs. *Pitt*,[a] *Lord Talbot* says, the reason for refusing an allowance to a trustee, for his care and trouble, is, that otherwise, under that pretext, the trust estate might be loaded and rendered of but little value : also, because of the great difficulty there might be in settling and adjusting the *quantum* of such allowance ; as one man's time might be more valuable than that of another, and that the rule is no hard-

ship on the trustee, since the acceptance of the trust was of | Colgin
his own choice.

vs.

Cummins.

In *Ayliffe* vs. *Murry*,[a] *Lord Hardwicke* remarks, "that [a] 2 Atk. 48.
chancery looks upon trusts as *honorary*, and a burden on the
honor and conscience af the trustee, and not undertaken upon
mercenary motives ; though a fair and open bargain with the
*cestui que trust*, for compensation, would be admitted."

I would here observe, with respect to the reason suggested
by *Lord Talbot* for refusing the allowance, that it cannot be
very satisfactory. Trustees are usually selected with refer-
ence to their honor, integrity, and sense of justice, and much
must depend on these virtues, for a true disclosure and faith-
ful execution of the trust in other respects, as well as in re-
lation to their compensation. Nor can I conceive, that the
difficulty in ascertaining the amount of receipts and payments
in the management of a mercantile concern, or in the per-
formance of many other trust duties, or in determining the
length of time necessary for the execution (which would be
fair *data* for the compensation) would be greater than in
other assignments or computations often required of courts of
chancery. As to the honorary nature of the services, I ap-
prehend that most American citizens, while engaged in the
management and settlement of complicated estates, or mer-
cantile concerns, would *view* this objection to their compensa-
tion, much in the same light that the American bar have re-
garded the English rule relative to *honorary professional* ser-
vices. I would not, however, be understood to question the
justice or authority of the rule, in the case of trusts of the or-
dinary kind, where the object is to secure a debt, indemnity,
or other benefit, to the trustee or his friend ; nor in the case
of *living partners*, who have voluntarily undertaken to carry
on trade for their joint benefit. In the former case, the ob-
ject to be effected, or a motive of friendship, is presumed to
have been the inducement for the undertaking. In the lat-
ter, the interest of the parties is relied upon to stimulate each
to the services required of him, and if he *partially fail*, from

Colgin
vs.
Cummins.
indolence, incapacity or other cause, intrinsic difficulty would truly arise, in determining the comparative value of the services of each. Yet, I would not readily concede, that a gross neglect of duty by one partner, devolving extraordinary labor on the other, would be without remedy in the tribunal which scrutinises the equity and justice of each case.

Another main reason for denying the compensation to ordinary trustees and partners, where none has been agreed on, is, that the parties, in full view of all the circumstances, have entered into an express agreement, to prosecute an enterprise, in which the personal services of one or both, in an anticipated degree, will be obviously necessary.

The agreement, which is generally by deed, has provided for compensation, or it has not, and the contract should govern while it continues in force. The parties have undertaken, in confidence, that each will comply on his part, with the spirit of the agreement.

In the case of a partnership limited as to its existence, if the neglect or misconduct of either be such, as to render it impossible to carry on the partnership on the terms on which it was entered into, on application of the other partner, a court of chancery will dissolve it.[a] If it be for a period altogether indefinite, either partner may dissolve it at pleasure.[b] And in all cases of dissolution, where from want of confidence among the partners, or the mismanagement of either, justice demands it, the chancellor will interpose, and appoint a manager or receiver to wind up the concern, and will direct inquiries in what manner it can be done most beneficial to those interested.[c]

If the partners have become dissatisfied, and lost confidence in each other ; or if they, having the ability, choose not to agree on an allowance to either for the management of the business, one or both must proceed without, or apply to chancery for the appointment of a proper person to transact the business, who will doubtless be entitled to compensation, though he is to act in the capacity of trustee.

a Gow on Par. 281.
b Id. 275.

a Gow on Par. 288, and 289.

A claim of allowance between living partners, which has not been provided for, I maintain, is different from that in favor of a survivor, who possessed the confidence of the deceased during his life time, and who, with the approbation and consent of his heirs and representatives, as in this case, afterwards continued to sell out the effects by retail, and to wind up the concern, for the mutual profit of all persons interested. In such case, the necessity of his acting in person or by agent, is absolute ; he is the most suitable, if not the only proper person to bestow the attention ; the necessity of this extraordinary attention has been created by a subsequent unforseen event, which may account for its not having been provided for in the deed ; and the services were bestowed *after the original connexion had ceased*. Justice would therefore seem to demand of the representatives a reward for their labor, in proportion to their benefits received from it. Had a manager or receiver been appointed, as would otherwise have been necessary, though less competent than the survivor, he must have been paid ; then why not make the services of the survivor equally a joint expense ? To pay him out of the *seperate* interest of the deceased has not been thought of, and this is an answer to the argument that he was attending also to his own business.

Perhaps none of the authorities relied on, in opposition to this allowance, justly applies to a surviving partner, under similar circumstances, unless it be a decision of Lord *Eldon*, in 1813, and references to it. I think I shall be able to show, that this decision has been subsequently departed from by the same chancellor, and that its authority has been rejected by many eminent jurists. The case alluded to, is *Burden* vs. *Burden*.[a] And though, in that case, the language of the chancellor was sufficiently comprehensive to enforce the principle contended for, denying the allowance to a surviving partner for his management, time and labor, in carrying on the trade ; yet the facts of that case were materially different from these, and such as might have warranted the

Colgin
vs.
Cummins

[a] 1 V. &Beam 170.

decision made on other principles that do not apply to this. There, the surviving partner was also *co-executor* of the deceased partner, had purchased the stock of goods remaining on hand, of his co-executor, and carried on the trade on his individual account, and made very small profits. The sale was adjudged void, on the ground, that he could not be the purchaser of the trust property ; and was to be considered as having carried on the trade for the benefit of himself and the children of the deceased. It was argued against his allowance, that he stood in the double capacity of executor and surviving partner ; that as executor, according to the English rule, he was entitled to nothing for his personal services, and that as surviving partner, carrying on the trade *without the consent of the other parties in interest*, the law was the same ; especially so, as the profits made, barely exceeded the common interest. The compensation was refused, but his expenses were allowed. *Gow* (433) in treating on this subject, adopts the same principle in general terms, referring as authority, to this case alone. The annotator refers, on this point, to three other cases, all of which were between living partners ; and in the two first, contracts had been expressed which implied an exclusion of the compensation.——(See

[a]3 Johns. Ch. Rep. 431.

*Franklin* vs. *Robinson ante*, and *Bradford* vs. *Kimberly.*[a])

The third was an *action at law*, to recover compensation for personal services, and for money expended : the court held, that the plaintiff and defendant, and several others, were partners in the business, concerning which the claim was made ; consequently, that the action could not be maintained ; and which I would say, was a clear principle. The *action at law* was an inadequate remedy between the *partners*, and even in chancery, the other partners should have been made *parties*. Had the suit been in chancery, it may be well inferred, the result would have been different, as the claim for moneys actually expended at the request of the

[b]1 Barn. Cres. 74---8 Searg. & Loub. 27.

others, was denied, as well as that for the personal labor. *Holmes* vs. *Higgins.*[b] The late decision of *Lord Eldon,*

which I consider a departure from the principle of his deci- <span style="float:right">Colgin vs. Cummins.</span>
sion in *Burden* vs. *Burden*, was in the case of *Brown* vs. *De*
*Tastet.*[a] There, as late as 1821, he seems to have recognised <span style="float:right">Jacob 284— 4 Cond. Eng. Ch. R. 133.</span>
the right of a *surviving partner* to a reasonable allowance for
carrying on the trade, after the death of one of the partners ;
and this appears to have been without any agreement, either
for the continuance of the business, or for the compensation.
To understand the principle of this decision, it will be suffi-
cient to notice only a few of the prominent facts. *De Tastet*,
*Mangin*, and two others, having been engaged as partners in
merchandize, Mangin died, and De Tastet and the others
continued to employ the whole capital in the trade for several
years, when the others withdrawing, *De Tastet* paid out to
them the probable amount of their interest, subject to the tak-
ing of the accounts. Afterwards, Brown as administrator of
Mangin, filed his bill against the other three partners, pray-
ing an account of Mangin's capital, and of the profits or in-
terest made with it since his death. After answer, and a re-
port by the master of the state of the accounts between the
partners, (and a dismissal of the suit as against the other
partners) De Tastet excepted to the report ; among other
grounds, insisting that an allowance should be made to him-
self, and the other partners, for the assistance afforded by
them to the business. Questions were raised as respects the
manner and form of making such allowance, as well as to the
right of the survivors to any compensation for their personal
services, the paticulars of which are immaterial to the princi-
ple. It appears that the *Vice Chancellor* recognised the
right, and ordered an account to be taken accordingly, from
which there was an appeal.

On a hearing before the *Lord Chancellor*, he says, " it is
not in the ordinary course of the court, in matters, of this na-
ture, to say, in the first instance, what is a just allowance.
I do not say that it was an improper consideration, what was
a just allowance, but this was not the proper mode of getting
at it." He continues, saying, " the same observation applies

Colgin
vs.
Cummins.

to the inquiry as to what will be a reasonable compensation for De Tastet's personal attention. I do not mean to say, that the master should not have made such an allowance, or that the court might not, by the original decree, have directed his attention to it, but I think it could not be done upon exceptions." In conclusion, he says, "What I propose to do, is, so to alter the original decree, as to bring out the case to which the principles that ought to govern, as to the profits, may be applied; to give such directions as may be necesary for that purpose, and to explain what it may be competent to crave as just allowance. I do not mean to intimate, whether the master should allow wages, as they are called, or compensation; but it cannot be denied, that if the business be such, that on the death of the party, other persons are concerned in aiding it by the application of their skill, their services, or their money, a great deal may be included under the head of just allowances, which, till the master has thoroughly sifted it, the court can not determine." Accordingly it was ordered, *inter alia*, that De Tastet should have liberty to submit to the master any claims as just allowances which he might consider such, " by reason or on account of the *management, transaction,* and *carrying on the business* or concern at any period," by himself or either of the other partners, or any other person. No final decree was then pronounced on the claim to compensation, but the opinion of Lord *Eldon* was fully expressed, that under the presumed facts of that case, the allowance should be made. No dissatisfaction was manifested by the complainant, but De Tastet appealed to the House of Lords, where this decree was affirmed. I can discover nothing in the nature of that claim to distinguish it, in principle from this.

In the State of Massachusetts, the principle is believed to prevail, which would sustain this claim. In *Wilby* vs. *Phinney, adm'r,*[a] no chancery process being there authorised, the plaintiff brought *assumpsit* against the administrator of *Harrison,* the deceased partner; the object of which was to have

a15 Mas. Rep
Rep. 116.

an account and settlement of the partnership liabilities.— The matter was submitted, by rule of court, to referees, from whose report, these facts appeared. The partners had entered into business under articles of agreement, showing that Harrison furnished the entire joint stock—that he was not bound to perform any part of the labor attending the concern, but might engage in any other business—that Wilby was to transact all the business, engaging in no other. The report also stated, that both became indebted to the firm, Harrison very largely, on account of other losing business in which he had engaged, so as to render the solvency of the firm doubtful. With various other accounts and claims submitted by the report for the decision of the court, was one of twenty eight hundred dollars, in favor of the plaintiff, for his *labors in settling the affairs of the company*, since the death of his late partner, which they awarded, if in the opinion of the court, the plaintiff was entitled to recover, in that action, a compensation for those labors.

The opinion of the Supreme Court of that state, on this point, is thus expressed—" It has been objected that, an action does not lie against the defendant as administrator, for the plaintiff's expenses in collecting the debts, and managing the concerns of the copartnership, since the decease of Harrison ; and this is certainly true. But these expenses may be allowed, by making a deduction from the amount of the property withdrawn by the plaintiff from the partnership stock." In this way, said the court, justice may be done, without violating any rule of law ; and judgment was entered accordingly. Though the court uses the words, plaintiff's expenses, in allusion to his reported compensation, as no other item was reported, to which the language can apply, and the opinion takes no other notice of this item, the reference clearly is to the allowance, " for his labors in settling the affairs of the company, since the death of his late partner."

22

Colgin
vs.
Cummins.

In opposition to the argument, that trustees generally, including executors, administrators, &c. are denied compensation in the United States unless provided for by express agreement, I will briefly notice a few Virginia cases, which appear to be founded on no statutory authority; from which it will appear, that the usual compensation to executors and administrators, in that state, is five per cent. commission for their services, on their receipts and disbursements. Also, that the courts of that state, maintain that the English rule, in this respect, is in derogation of the true principles of the common law; or at least, that it is too unreasonable to be enforced in the United States, where the customs and usages are essentially different. Similar views are understood to have generally prevailed in the courts of this state, in relation to executor and administrator. In many cases I would consider five per cent. extravagant. I would gratify no mercenary or speculative views, but make such reasonable allowance as would ensure faithful and competent trustees.

[a]1 Mumf. 150

In the case of *Fitzgerald* vs. *Jones,*[a] it was held, that an account of the extraordinary care and attention required of the executor, the real and personal estate, having, in obedience to the will, been kept together and managed by the executor, he should be allowed a commission of seven and a half per cent. on all his receipts and disbursements.

[b]2 Mumf. 242

In *Triplett's ex'r.* vs. *Jamison,*[b] commissions having been allowed the executor, at the rate of seven and a half per cent. on a large estate. The Supreme Court held the allowance extravagant, but sustained the claim for five per cent.

[c]3 Mumf. 288

In *McCall* vs. *Peachy's adm'r,*[c] where there were circumstances of extraordinary trouble attendant on the administration, the administrator was allowed a commission of ten per centum on all specie received; and as to paper money, a commission of five per centum on the value when received, and the same on the value when paid away, according to the legal scale of depreciation. The right to commissions in that state, as a compensation to executors and administrators for

their services in managing and settling estates, is equally sustained by many other reported cases; among which, reference may be made to *Hopkins* vs. *Bernard, &c.*[a] and *Miller* vs. *Beverly.*[b] In the case last referred to, cross suits in equity were brought for the settlement of Miller's accounts, as trustee of Beverly. By the deed which created the trust, these joint trustees were appointed; and first by the incompetency of one, and then by the death of another, the whole subject devolved on Miller.

Colgin
vs,
Cummins.
[a] 4 Mumf. 83.
[b] 4 Henn. &
Mumf. 415.

On the question of the right of the trustee to compensation for his services in performing his trust, *Chancellor Taylor* expressed himself with much zeal, thus: " We considered the rule of the English courts, denying compensation to trustees for their labor and pains, incompatible with that standard of justice, which commands us " *to live honestly, hurt no body, and render to every one his due.*" He assimulates the right to that of commissioners acting under an order of court, where they have sold property and received the money, in which case he said he knew of no instance in which a commission had been refused. He said it had been considered a hardship in England, where the rule was suffered to obtain, and had never taken foot-hold in this country.

From this review of the authorities, I think in a case like the present, that a reasonable compensation for the service, skill, and attention of the surviving partner, in continuing the business by private sales for a short term, for the joint benefit, from which profit is presumed to have been made, and afterwards closing the concern in the usual and more summary mode, is sustainable on principle and authority; that though it be otherwise, where all the partners survive, to contribute mutually the services originally contemplated, and there has been no agreement to compensate the services of either; yet, that the unforseen event of the death of one, devolving the whole or greater duty on another, by which the interest of the deceased is advanced, must entitle the survivor, in justice and in equity, to a reasonable allowance for his services.

Colgin
vs.
Cummins.

2. I will more concisely consider the question of interest, on the balance that may have been found due to the estate of the deceased partner.

The correct doctrine is believed to be maintained, in the case of *Staughton* vs. *Lynch.*[a] It was there ruled, that a partner who draws out money from the copartnership funds, is not chargeable with *compound interest*, but *with simple interest only*, on the sums drawn out ; unless it appears that he has traded or speculated with the money, and made a profit on it, and refused, on being called on for the purpose, to disclose the profits. That the period of the dissolution of a copartnership, is the proper time to make a rest, and adjust the balance of a partnership account, and the partner against whom the balance is found, is chargeable with interest thereon.

a2 Johns. Ch.
Rep. 209.

The chancellor remarked, that he apprehended it to be the general practice, as well as the good sense of the thing, that a rest should be made on the liquidation and adjustment of accounts at the period of the final dissolution of the concern. It should be observed, that the case referred to, was a contest between living partners, after the dissolution of their firm. But the principle must be the same where the dissolution has been caused by the death of one of the partners, and the management of the concern has devolved on the survivor.— Where there is no agreement on this point, the situation of the estate, and the course pursued by the survivor, must determine the precise time from which interest should be allowed.

If the business be properly continued, as in this case, beyond the death of one of the partners, the subsequent date when the business ceases would appear to be the true period. If, however, the property be not disposed of, or if sold, the debts not due, the *rest* should be made only from the time of their maturity ; and if due from persons unconnected with the firm, only from the time when it was practicable to effect collection, charging the survivor, until then, such simple interest as may accrue on the debts.

As respects the proceeds of this closing auction sale—as the surviving partner was the sole purchaser, and on a credit of twelve months, I would place the rest for the deceased partner's share of so much, at the expiration of this term of credit, that is, the first of January, 1829. The principle of annual rests, does not appear justly to apply to a case like the present.

The case of *Shieffelin* vs. *Stewart*,[a] was that of an administrator who employed the money belonging to the estate, in trade for his own benefit, and of the profits of which, he refused to give any account.

The master, in stating an account, after allowing a reasonable time for the settlement of the estate, charged *compound interest*, making annual rests in the account for that purpose, which was confirmed by the court. The chancellor, in rendering the decree, gives this illustration of the doctrine: he says, " it is certain that the allowance of compound interest is often essential to carrying into complete effect, the principles of the court, that no *profit, gain,* or *advantage*, shall be derived to the trustee from his use of the trust funds. All the gain must go to the *cestui que trust*. This is the true equity doctrine. It secures fidelity, and removes temptation: and it is the ground of this allowance of annual rests, in the taking of the account, where the executor has used the property, and does not disclose the proceeds." To bring the surviving partner, in this case, within the influence of the principle of annual rests, it should be made to appear, that after the lapse of sufficient time to ascertain the clear balance due to the estate of the deceased partner, or some certain portion of it, the former refused to account for, and pay it over, without any reasonable excuse for the delay or refusal; or that having such balance in his possession, he has speculated upon it, and made profit exceeding the rate of simple interest.

For a farther illustration of the rule relating to rests for the computotion of interest, reference may be made to the

*Colgin*
vs.
*Cummins*

a 1 John. Ch. Rep. 620.

Colgin
vs.
Cummins.

a6 Johns. Ch.
Rep. 31.3

case of *Van Benshooten* vs. *Lawson*.[a] That case involved the computation of interest, in the foreclosure of a mortgage, which had been taken to secure the payment of a bond. The sum for which the bond and mortgage were given, was composed in part, of compound interest, computed by agreement, between the parties. The chancellor there remarked, that compound interest can only be admitted on the fact of a written agreement, made *after* the interest upon which the agreement operates, has fallen due; and to give such an agreement a retrospective effect, leads to oppression. It is equally objectionable as an agreement, made at the time of the original contract or loan, that compound interest should begin and run upon the lawful interest, the moment it falls due, whether payable yearly, half yearly, or quarterly; any such agreements are held to be oppressive. To exact from the debtor, interest on the previous arrears of interest, without a previous special and particular agreement, for that purpose, is inadmissible. It has no valid basis, nor any acknowledged legal consideration, on which it can rest, if the previous agreement, made at, or after the time the interest became due, be wanting. It is the agreement, and not the law, nor the delay of payment, that will turn interest into principal."

This is deemed a sufficient reference to authorities, to show that compound interest, whether by making rests for the computation, or otherwise, is not favored in law or equity, and though it is sometimes allowed against trustees, it is only where there has been some gross neglect, or violation of duty, or a profit made on the trust fund; circumstances, which do not sufficiently appear in this case, to subject the surviving partner beyond the liability mentioned.

These views are believed not to sustain this assignment of error, as presented; and it was more in reference to the importance of the principle, than any difference of opinion among the members of the court, that I was induced to express my seperate opinion on this point.

3d, 4th, 5th. On all the remaining questions, I concur in the decision pronounced by Judge THORNTON—that the record does not disclose any facts, to justify a rejection of the reported allowance for the loss on cotton, as a just charge against the firm—that the note offered as a set off was not allowable in this suit, under the circumstances of the case; and that the costs of this suit, in the court below, were properly decreed to be paid by the surviving partner, 'out of the partnership effects.

My reasons so nearly correspond with those already given, that I decline a 'seperate expression of them.