The opinion of the court, unanimously affirming the decree of the Chancellor, was delivered by
Green, C. J.
The original bill in this cause was filed to foreclose a mortgage given by Sinnickson and wife to James Bruere, in his lifetime, to secure the payment of five thousand one hundred dollars in one year from date. The mortgage is dated April tenth, eighteen hundred and twenty-seven.
The matter was referred to a master, to ascertain the balance due to the complainants upon the mortgage. The master made his report, dated twenty-fourth of June, eighteen hundred and fifty-four, stating an account between the parties, and finding due to the complainants the sum of ten thousand five hundred and forty-five dollars and fifty-eight cents.
The defendant excepted to the report, because the master has not given credit to the defendant for ten head of cattle, of the value of twenty-five dollars each, and forty hams, of the value of one dollar and twenty-five cents each, (amounting in the whole to the sum of three hundred dollars,) sold and delivered by Sinnickson to Bruere in June, eighteen hundred and forty-two.
The Chancellor overruled the exception, confirmed the *664 master’s report, and made a final decree accordingly, in favor of the complainants. From this decree the defendant appealed. The sole question is, did the master err in rejecting the credit ?
To entitle himself to an allowance of the credit, it is incumbent on the defendant to show to the satisfaction of the court—
First. That the price of the articles sold was to be applied as a payment on account of the mortgage.
Second. That the payment has not been so applied.
First. The proof that the price of the articles sold and delivered by Sinnickson to Bruere was to be credited upon the mortgage at all, is not of the most satisfactory character. No receipt or written memorandum is produced in support of the claim. The testimony of a single witness is relied upon. That witness is the son of the defendant. His age at the time of the alleged transaction, does not appear. The credit claimed is in June, eighteen hundred and forty-two. The witness was examined in June, eighteen hundred and fifty-one, nine years after the transaction to which he is called to testify. Were the defendants seeking to recover the price of the goods sold, the claim would long since have been barred by the statute of limitations. The testimony of the witness upon this point is as follows : “ I remember my uncle, James Bruere, coming to my father’s house in May or June, eighteen hundred and forty-one or eighteen hundred and forty-two. He came after money. My father told him he had no money, but he had some cattle, which he would sell him.” After stating the purchase and delivery of the cattle and some hams, the witness adds: "I understood the price of the cattle and hams so taken by him was to be endorsed on the bond.”
This is the whole evidence that the articles purchased by the complainant were to be credited on the mortgage debt. The articles were not then delivered. The witness was not present at the delivery, nor does he know what subsequently transpired between the parties respecting the price.
This evidence of the mere wnderstanding of the witness, *665 coming from the son of the defendant, after so great a lapse of time, without any explicit proof of what the agreement actually was, is not satisfactory, and affords a very insecure foundation on which to rest for proof of payment of a mortgage debt.
Second. But, admitting the sufficiency of the evidence to show that the articles purchased were to be credited on the bond, to what credit is the defendant entitled more than he has received ?
Two of the plaintiff’s sons testify that, soon after the alleged purchase in June, eighteen hundred and forty-two, ten or twelve cattle and about forty hams were delivered by the defendant to Bruere. Two witnesses on the part of the complainants, entitled to at least an equal degree of credit with the defendants’ witnesses, testify that there were, in fact, but five cattle delivered.
It further appears that, on the fourteenth of June, eighteen hundred and forty-two, the time of the alleged delivery of the cattle, there is a credit endorsed upon the bond of one hundred and thirty-one dollars, on account of interest. This, with the exception of twenty dollars received from a third person, is the only payment credited on the bond from March, eighteen hundred and thirty-nine, to May, eighteen hundred and forty-seven — a period of over eight years.
This credit is endorsed on the bond at or about the time of the delivery of the cattle. It appears by the evidence of the son that, at that time, the defendant had no money to pay upon the bond, and this is assigned as a reason why the cattle were offered in payment. If, then, the defendant had no money to pay with, and the cattle were offered as a substitute, how comes that credit upon the bond ? Is it not reasonable to conclude that the credit is, in fact, the price of the articles delivered in lieu of money ? True, it does not precisely correspond in amount, but the witnesses may have erred (as, in fact, it is obvious they did,) in regard to the number or value of the articles delivered, or a part of the price may have been paid in cash or applied to the payment of *666 some other claim. This is more reasonable than to impeach the fairness of the credit on the bond.
It appears, moreover, that, within five months after this credit, the defendant gave his judgment bond for one thousand dollars, in payment of arrears of interest due on the mortgage. This credit is also endorsed upon the complainant’s bond. It is fair to presume that' the defendant’s attention was at that time specially called to the payments on the bond, to the arrears of interest, to the receipts either in his own hand, or endorsed on the bond. If there was error or omission in the credits, it should, and doubtless would have been corrected at that time. Under such circumstances, an attempt to correct an alleged error in the credits endorsed upon the bond, after the lapse of nine years, ought not to be regarded with favor.
There is no satisfactory evidence to show that the master erred in refusing to allow the credit.
The decree must be affirmed, with costs.
Cited in Clark v. Condit, 6 C. E. Gr. 323.