Buckingham *v.* Ludlum.

---

ALICE BUCKINGHAM, appellant and appellee,

and

JAMES LUDLUM, appellee and appellant.

1. In taking partnership accounts, the question whether interest shall be allowed or disallowed cannot be determined by the application of any established general rule, but must depend on the circumstances of each particular case.

2. Interest will be disallowed before dissolution, and allowed after dissolution, on overdrafts made by one partner, where there are special circumstances.

3. A contract made between partners *pendente lite*, on a give or take offer for the purchase or sale of the real estate of the firm, will not be enforced on petition in the cause, before the accounts are adjusted.

This cause was argued at May Term, 1876, before Hon. Amzi Dodd, as special master. The appeal was taken from his opinion.

On cross-appeals from the decree of the chancellor, dated August 22d, 1876, and appeal from the order of the chancellor, denying relief on petition, dated August 29th, 1876.

*Mr. T. N. McCarter*, for Mrs. Buckingham.

*Mr. A. Q. Keasbey* and *Mr. C. Parker*, for Mr. Ludlum.

THE MASTER.

The decree, in accordance with my advice in this case, was made on the 22d of August, 1876. The controverted questions, as to which the two cross-appeals have been taken, relate to the adjustment of the partnership accounts of the late firm of James Horner & Co. This firm was formed May 1st, 1854, by James Horner and James Ludlum. Its business was the manufacturing of files and steel, carried on for the first few years in various places, but since about the year 1862 in Pompton, in this state, where the firm owned some five hundred acres of land, on which were mill-streams, water-power, dwelling-houses and factories. Horner, who was by many years the senior member of the firm, died on the 9th of June, 1874, leaving a will dated June 20th, 1873, which was duly proved by his daughter and executrix, Alice Buckingham, who, with her husband, John M. Buckingham, is the complainant in this suit. The bill of complaint was filed August 24th, 1874, for the appointment of a receiver, an accounting, and the settlement of the partnership affairs. On the 17th of the following November, Ludlum, the surviving partner, was appointed receiver. At the final hearing on the pleadings and proofs, in May, 1876, the argument of counsel was directed, first, to the question of the respective shares of the partners in the assets of the firm, or, in other words, to the proportions in which such

assets should be divided between them ; and, second, to the question whether interest should be charged against the partners, or either of them, on their individual accounts with the firm.

As to the first of these questions, my conclusion was, that the partners were entitled to share equally in the profits and losses of the business during the partnership term, but that, by reason of the inequality in the case of each partner between his payments of money to the firm and his drafts from the partnership funds, the firm was indebted, on the 9th of June, 1874, the date of its dissolution, to James Horner in the sum of $476.01, and that James Ludlum was at that time indebted to the firm in the sum of $73,975.47. Subject to the allowance of these sums, each partner had an equal half ownership in the partnership assets.

As to the second question, my conclusion was that, under the circumstances of the case, interest ought not to be allowed in favor of or against either partner prior to the dissolution of the firm, but that it ought to be allowed from and after the dissolution on the sums due as above.

First : There were no written articles of partnership. No memorandum or entry in the firm books indicates what its terms were—what capital each was to contribute, or what was to be the division of profits. The books of account, running through a period of twenty years, have been loosely and inadequately kept. No settlement between the partners, no inventory of property, no account of stock, no balance-sheet, appears ever to have been made. The ledger accounts of the partners show what each paid in and what each drew out. The books were always kept by or under the direction and supervision of Ludlum, who resided in Pompton, and had the immediate and active management of the business. Horner's residence was in New York. He took Ludlum, when quite young, into the business, and confided always with an apparently implicit confidence in his capacity and honesty. He visited the works in Pompton often, and stayed there on occasions for days at a time.

In the earlier proceedings in this suit it was denied by the complainants that Ludlum became an equal partner until several years after the beginning of the firm, but this denial was not insisted on at the argument, and the equality was formally admitted.   The defendant, however, contended not only for an equality as to profits and losses, but for an equal division of the assets, without regard to the large amount of his indebtedness.   His claim was, that the individual accounts of the members of the firm should be treated as satisfied and cancelled—a claim unsupported, in my judgment, by the proofs, and which I disallowed.   The ground upon which it was sought to be maintained was the language contained in a former revoked will or codicil of Horner—the will bearing date the 15th of March, 1871, and the codicil the 20th day of June, 1873, the latter date being three days prior to the date of the last will, which was admitted, as before stated, to probate.   The language of the codicil is as follows :   " My share and interest in the copartnership property and assets, real and personal, of the firm of James Horner & Co., is one equal half part ; my partner, James Ludlum, owns the other equal half part thereof; this includes all real estate owned by us together."   Upon these words of the codicil, and upon certain phrases of the will to which the codicil belongs, it was argued that Ludlum's debt to the firm, as shown by the books, should be expunged. The phrases of the will are those in which mention is made of Horner's capital or estate in the business, but they seem to me too destitute of force or significance as proofs to need to be cited.   Giving to the language of the codicil and will the utmost effect which, as declarations of the testator, they could be legally entitled to, I think them altogether insufficient to justify the defendant's claim.   There is nothing in them, so far as I can perceive, to affect, in any way, the individual accounts of the partners.   These accounts are independent of their shares in the partnership.   The accounts might vary daily or weekly, and their state at the making of the codicil or will, when the testator was sick, could not

be presumed to be known to him. The only reasonable construction of the testator's language is, in my judgment, a declaration that the partners were equal in the ordinary sense of a partnership equality—namely, an equal participation in the profits and losses. Nothing in the proofs seems to me to sanction the suggestion that the testamentary language in question should be otherwise interpreted. Nor can I yield to the contention of defendant's counsel, that because a new ledger was opened by the firm in 1864, without the balances of the partners, as shown by the prior ledger, being brought into it, such balances, consisting of a credit due to Horner, and an indebtedness due from Ludlum, should now be expunged. This circumstance evinces the loose and unsatisfactory manner in which the bookkeeping was conducted, but it does not, by any means, prove that a settlement had been made between the partners, nor that Horner himself, who had comparatively little to do with the books, was aware of the omission.

On behalf of the complainants, much stress was put upon the fact that Ludlum, in a report shortly after his appointment as receiver, included the balance against him without explanation or mention therein of the claim set up in regard to it afterwards. While this circumstance is entitled to weight, I cannot regard it as a conclusive admission, in view of the oral explanations made by the receiver shortly after the report was presented, and pointing to the alleged equalization now sought to be derived from the language of the will.

Neither can I find support for the cancellation of the debts due from Ludlum, in the suggestion of the defendant that the capital originally contributed by the partners had been sunk by losses incurred in the unprosperous years or periods of the business. Professional book-keepers and accountants were sworn on both sides as witnesses. Elaborate and ingenious papers were prepared and read by them, subject to reserved objections, maintaining different principles as applicable to what was termed the equalization of

the partners, and arriving at widely different results. Upon the best consideration I was able to give to the testimony and the books of account, my conviction was clear that the proper method of settlement—that most consonant with the proofs and the understanding of the partners themselves— was to accept the books as they stand, charging each partner from the beginning with the moneys drawn out by him, and crediting him with the moneys paid in. In pursuance of this view I directed a statement to be made by one of the accountants and witnesses, exhibiting the aggregate debits and credits of the partners, after some corrections and adjustments, so as to show the balance due from each on the 9th of June, 1874. This statement I have marked approved, and refer to it as exhibiting what seemed to me the best attainable results. It was the request of counsel on both sides that the amounts, as well as the principle of arriving at them, should be determined by me without further refer- ence or report.

Second: As to the question of interest. The authorities bearing on this point were discussed with great learning and thoroughness at the argument. It is not needful for me to review them. The view on which I have acted in denying the allowance of interest prior to the date of the dissolution, and in granting it after that date, is that expressed by Vice-Chancellor Sandford, of New York, in *Beacham* v. *Eckford,* 2 *Sandf. Ch.* 116; and by the supreme court of Pennsylvania, in *Gyger's Appeal,* in the opinion of Judge Sharswood, delivered in 1869, and reported in 62 *Pa. St.* 73—namely, that in taking partnership accounts, the ques tion whether interest shall be allowed or disallowed cannot be determined by the application of any established general rule, but that such allowance or refusal must depend upon the circumstances of each particular case. This, it was said by the court, seems much the safest principle to adopt, in view of the confidential relations of the parties, and the variety and complication of such accounts. No unbending rule could be laid down which would not, in particular

instances, work great injustice.  In this view, it seemed to
me clear that in the present case interest should be charged
and allowed from the time of dissolution.  The refusal of
interest could not be warranted, I think, by alleging that
no balance had been struck on a settlement between the
parties.  The making up of such balance involved, as now
adjudged, only a simple and easy computation.  The omis-
sion to make it up appears to have been due to the defend-
ant, who was in charge of the books, and whose duty it was
to keep them carefully and correctly.  The unliquidated and
complex matters which, in some instances, may prevent
either party from knowing his indebtedness, are not shown
to have existed here.  Of the large sum due from Ludlum
to the firm, as shown by the books, $10,000 were drawn out
for his personal use, a few days prior to Horner's death.  It
would seem altogether inequitable that no interest should
be. charged on this draft; but I can assign no satisfactory
reason for distinguishing this draft, so far as relates to the
time subsequent to the dissolution, from the other and
anterior drafts, which in all make up the large sum of
$73,975.47, a sum which, if paid to the firm, or applied by
Ludlum to the payment of firm debts, would certainly have
worked more beneficially for its good than the allowance
of interest to the firm on that amount retained in his hands.

In respect to interest prior to the dissolution, the view in
which it seemed to me equitable to deny it, was drawn from
the long period in which the accounts had been running,
the absence of interest charges, the high probability that
this · absence was known to Horner, his acquiescence in it,
and the consequent presumption of an understanding or
agreement that none should be made.  This conclusion,
though adopted upon the best consideration of the case
which I have been able to give, was not arrived at without
hesitation.  The inference on which it stands—that is, of an
understanding between the parties that the interest com-
putation should be dispensed with—seemed to me fairly
deducible from all the circumstances disclosed by the proofs,

and being so deduced, withdraws the present case from the operation of the rule as laid down by Chancellor Green in *Morris* v. *Allen,* 1 *McCart.* 44, and other cases to the like effect. The right of a partner to receive interest on advances made by him for the benefit of the firm, in the absence of an express agreement for that purpose, rests upon the usage of trade; the usage raising an implied contract to pay interest on the principal advanced. Where the party charged with interest has notice of the advances, or where, from the circumstances of the firm and the nature of the business transacted, they must be presumed to have been known and approved by him, the claim for interest is legal and equitable. *Morris* v. *Allen,* 1 *McCart.* 44.

The acquiescence of Horner in the omission to charge interest during his life-time cannot equitably be made a ground for denying it after the dissolution of the firm, when the business was brought to an end and new equities arose from the new condition of things.

The opinion of the court of appeals was delivered by

SCUDDER, J.

The opinion of the master, in this case, states the facts on which the decree is founded, and a brief reference is all that need now be made.

The copartnership between James Horner, the father of the complainant below, Mrs. Alice Buckingham, and James Ludlum, the defendant, began on the 1st day of May, 1854, and was dissolved by the death of James Horner, on the 9th day of June, 1874. They were largely engaged in the manufacture of steel, and in the file business, at Pompton, Passaic county, and elsewhere, and owned much valuable real estate, mills, materials for manufacture, and other property.

In August, 1874, the complainant, who was executrix of her father's will, filed a bill in chancery for relief and an account of the copartnership.

For several years immediately preceding his decease James Horner was an invalid, and, on account of disease

and his advanced age, gave but little personal attention to the business, which was almost exclusively under the control and management of James Ludlum, who was much younger, and fully able to conduct their affairs. Ludlum had been brought into the firm when quite young, as an equal partner, by the confidence and friendly interest of James Horner, and this feeling continued up to the time of the dissolution of their copartnership by the death of the latter.

Differences arose between the parties to this suit soon after Mr. Horner's death, concerning the settlement of the business and the disposition of the property, and this action was brought.

The first objection presented by the appeal is, that the decree adjudges that, at the date of the dissolution of the firm of James Horner & Co., on June 9th, 1874, James Ludlum was indebted to the firm in the sum of $73,975.47, and that the firm was indebted to Alice Buckingham, executrix, &c., in the sum of $476.01. This result was obtained by a statement of the individual accounts of James Horner and James Ludlum, including all capital or other moneys paid in or drawn out on their respective accounts, during their copartnership, according to the books of James Horner & Co., made by a competent investigating accountant, under the direction of the master.

| | |
|---|---:|
| By this it appears that James Horner paid in.. | $85,908.60 |
| and drew out.................................... ........... | 85,432.59 |
| leaving a balance to his credit of................... | $476.01 |
| James Ludlum drew out ........................ | $112,348.59 |
| and paid in............................................. | 38,373.12 |
| leaving a debit balance of.......................... | $73,975.47 |

These balances stated from the books of James Horner & Co., which were kept under the direct supervision of Mr. Ludlum during all the time he was a member of the firm, are found to be correct, after a thorough examination by the master, and there is no evidence that materially varies

from them.   The correctness of these accounts can hardly be disputed by the defendant, in the absence of satisfactory proof of error in the account; none such appears in the testimony before us.   These balances are found by stating an account from all the ledgers from the time the firm began, in 1854, to its close, in 1874.   It is objected that the greater part of this debit existed prior to 1864, that at that time new books were begun, and no debit balance was then carried over into the personal account of James Ludlum from the old books, and that he was never afterwards charged with the earlier debits.   It is further urged that it was right thus to open the new books, because that, prior to that time, the firm had lost heavily in business and was really insolvent, if called upon to close business, whereby all the capital and assets were lost, and that the subsequent prosperity of the firm was owing to the exertions of the defendant and the accommodation loans obtained from his father, without cost to them.   But there is no direct evidence that Mr. Horner ever knew or assented to these omissions, or that his attention was specially called to them. The account was not balanced in the former ledger, and the mere omission to carry it into the succeeding book is not a settlement on the face of the books.   It was a current account until a balance was struck and a settlement made. This also answers the other allegation, that a temporary insolvency will cancel all obligations between partners for capital or overdrafts.   There is no authority, or reasons, or any business usage that sanctions such a conclusion. Through all the losses and gains of the business the personal accounts of partners will run until there is a balance and settlement between them.

The declaration in the unproved will of James Horner, dated June 17th, 1873, that his share and interest in the copartnership property and assets, real and personal, of James Horner & Co., was one equal half part; that his partner, James Ludlum, owned the other equal half part thereof, and that this includes all real estate owned by them

together, is but an admission that they were equal partners in the business and property; it has no reference to their personal accounts.

The further causes of appeal, that it is adjudged that James Ludlum is bound to pay into the assets of the firm before any division or distribution thereof between such partners, the sum of $73,975.47 and interest, and that Alice Buckingham, executrix, &c., is entitled to receive from the estate of said firm, after the payment of debts, and before any division or distribution thereof between said partners, the sum of $476.01, are not well taken. The direction in the decree means that in the final accounting and statement between the partners these sums, respectively, shall be credited to the one and charged to and paid by the other out of the estate of the firm before an equal distribution is made. The terms are not that payment be made before a balance is struck, but before a division or distribution of assets is made. There can be no equal division between the partners until these personal debts and credits, which are unequal, are brought into the account. If one partner has taken out of the firm's property more than his copartner, he must account for it on final settlement before he can claim an equal share of the estate. If there is a balance in his favor, there would be no reason that he shall make an actual payment. *Richardson* v. *Bank of England*, 4 *Myl. & Cr.* 165, 172; *Foster* v. *Donald*, 1 *J. & W.* 252; *Crawshay* v. *Collins*, 2 *Russ.* 325, 347. This is my construction of the decree in this regard, and if there be any ambiguity in the expression used it may be remedied and effect given to it according to its true intent and meaning.

The most important questions raised by the cross-appeals are those which relate to the denial of interest in the personal accounts prior to the date of distribution, and the allowance of such interest after that date.

There was no contract in writing between these partners (Horner and Ludlum), nor has any agreement been shown. During the time they were in the firm together, there were

no entries, no balances struck, and no rests of interest made in their accounts. By an agreement in writing, made May 1st, 1849, between James Horner, Edward F. Grant and Marcus L. Cobb, a copartnership was formed in the business of file-making, at Sing Sing, New York, to continue for five years. In that agreement there was a stipulation that an interest account should be kept with each of the parties in the books of the firm.

James Ludlum bought out Cobb's interest, in 1852. In 1854, the copartnership expired by its terms, and Grant retired from the business. At that time there was a statement of account, and interest was computed to the credit of each partner. After the retirement of Grant, the firm was changed to J. Horner & Co., Horner and Ludlum being the only partners. The business was greatly enlarged in 1861, by the purchase of the Ryerson property, at Pompton, and Ludlum became the resident partner, having the direct charge of the business, and keeping the books. Horner put in the most capital, but Ludlum procured endorsements by his father, and aided thereby in furnishing funds for the business.

It is said that the terms of the former partnership agreement continued as to interest. But the business and the relations of the parties were changed. Ludlum was now an equal partner with Horner, and the active partner of the firm. There will, therefore, be no presumption of the continuance of the same covenants as those contained in the former agreement. In opposition to this presumption, we have the usage of the business.

The books of the firm, for the long period of twenty years in which they were associated, show no rests in their personal accounts, and no charges of interest. It is true, that there was no settlement between them during that time; but Mr. Horner was a man of business; he had access to the books and accounts of the firm when he wished. Each partner put money in the firm, and each drew it out as he desired, without any limitation or agreement, and none of

the terms of the former contract appear ever to have been observed by them.

With these facts before him, the master held that no interest should be charged up to the time of the dissolution by the death of Mr. Horner, in 1874; but that it ought to be allowed from and after the dissolution, and to this the decree was conformed. Interest prior to dissolution was denied, because it seemed equitable, under the circumstances, from the long period in which the accounts had been running without interest charged; the probability that Horner knew and assented, and the consequent presumption of an understanding between them that none should be made. The reason why he should be thus liberal was his evident friendship and confidence towards Ludlum, and the further fact that he was most active in the work, and procured loans when they needed them.

It seems to me that little can be added to what was said in the opinion on this subject. The rule was adopted that, in taking partnership accounts, the question whether interest shall be allowed or disallowed cannot be determined by the application of any established general rule, but that such allowance or refusal must depend on the circumstances of each particular case. He cites *Beacham* v. *Eckford*, 2 *Sandf. Ch.* 116, and *Gyger's Appeal*, 62 *Pa. St.* 79. Judge Sharswood, in the latter case, says that "this seems much the safest principle to adopt, in view of the confidential relations of the parties, and the variety and complication of such accounts. No unbending rule could be laid down which would not, in particular instances, work great injustice."

1 *Lindley on Part.* 649, gives it, as the result of the author's examination of the subject, that the state of the authorities is not such as to justify the deduction from them of any general principle upon this important subject. If partners intend that there shall be interest charges made for moneys advanced to the firm, or for overdrafts on personal account, there can be no hardship in requiring that there

shall be some agreement shown to that effect, or some usage in their business by balances and rests in their accounts, with charges and credits of interest. If this be not done, then let the circumstances of each case determine whether the charges of interest are reasonable and equitable.

This subject is considered in *Morris* v. *Allen,* 1 *McCart.* 44. It is there maintained that interest for advances made by a partner, for the benefit of the firm, should be allowed, and that such allowance rests on the usage of trade raising an implied promise to pay interest. It cites, with approval, the language of Lord Langdale, in *Millar* v. *Craig,* 6 *Beav.* 433, that interest should be given, if you can collect, from circumstances or from the usage between the parties, that there ought to be, or was intended to be, such a computation of interest. This leaves the matter where it is placed by the rule adopted in this case, to be determined by the circumstances of each case. In considering these circumstances, a difference might readily be found between the allowance of interest for advances made to the firm with the knowledge of the parties to be charged and a charge of interest for overdrafts on an unsettled account, without fraud, and in anticipation of profits and an increase in the value of property of the firm. That difference is found in the case above cited and the one now under consideration.

A clear distinction is made in the cases between advances made by way of loans beyond the capital and additional capital. The intention may be shown to give interest on the footing of debtor and creditor, where, otherwise, there would be no charge between partner and partner.

The allowance of interest after the dissolution, was put, by the master, on the peculiar equity of the case. It is based on this consideration, that, though no balance had been struck at that time between the parties, the making up of such balance involved only a simple computation. The omission was due to the defendant's own neglect, as he was in charge of the books. $10,000 were taken by him, in the note of the Union Car Spring Company, from the funds of

the firm, just before Mr. Horner's death, and charged to his own private account, July 13th, 1874, four days after his death. This, it is admitted, was taken as a provision for his family, in case of the dissolution of the firm. The amount charged is not in the condition of an unliquidated balance, depending on a settlement of the entire business, but an easily-ascertained sum of overdrafts in excess of moneys paid in, and of the amount drawn by the other partner. It is not, therefore, in the position of capital rendered unproductive by dissolution and the winding up of the business, nor the uncertain balance involved in the general debits and credits and the disposition of the partnership papers, but an amount taken for his own use, and found in his personal account.

There is no difficulty in comprehending this allowance within the same equitable rule above stated, and justifying the charge of interest after dissolution by the particular circumstances. We find the same conflict of authority here as in the other case of interest charges before dissolution. See *Collyer on Part.* 335, and cases in notes; *Stoughton* v. *Lynch,* 2 *Johns. Ch.* 209; *Hollister* v. *Barkley,* 11 *N. H.* 501; *Simpson* v. *Feltz,* 1 *McCord (Ch.)* 213; *Honore* v. *Colmesnil,* 7 *Dana* 201; *Washburn* v. *Goodman,* 17 *Pick.* 519; *Dexter* v. *Arnold,* 3 *Mas.* 284.

*Barfield* v. *Loughborough, L. R.* (8 *Ch. Ap. Cas.*) 1, a late case, holds that, in taking the accounts of a partnership, interest after dissolution will not, in general, be allowed to the partners on their respective capitals, but the rule is varied by agreement. This is put on the ground that the capital is then not in the employment of the partnership in profitable business transactions, and that the dealings only continue for the sole and special purpose of winding up the affairs. But it also rules that, after the dissolution, any sums received and retained for his own use by a partner may be debited to him, with interest. If he retains from the estate of the firm a sum, part of it drawn on the near approach and in anticipation of dissolution, which, to his knowledge, is an

overdraft greater than his partner's, the charge of interest against him is equitable from the time of dissolution. It is not the allowance of interest on capital, but he should stand in the position of a debtor to the firm. As interest is accruing on debts due by the copartnership to others, and all business is suspended except the mere winding up, it is proper that a charge should be made of interest against the partners for moneys received by him, apparent on the books, in excess of his partner's receipts, which would be assets for the payment of debts if they had not been withdrawn.

The last appeal is taken by the defendant from the order of the chancellor, dated August 29th, 1876, denying the petition which was presented, praying for the enforcement of an alleged contract made *pendente lite* on a give or take offer for the purchase or sale of the real estate belonging to the late firm. The offer was made by Ludlum, accepted by Mrs. Buckingham, and a controversy has arisen as to the time and manner of payment. The order denying relief shows that the court deemed it equitable and inexpedient in the situation of the affairs of the partnership, and in view of the relations of the partners to the partnership estate, to require the immediate performance of the contract on the part of the complainants, and adjudges that such requirement should be withheld until the further adjustment of the respective rights and interests of the said parties in the estate of said partnership, under the direction of the court. The effort attempted by the contract was to eliminate the real estate of the firm from the contest over the accounts of the copartnership while it was in the hands of the receiver appointed by the court, awaiting the result of a settlement of the partnership accounts. It was a proper discretion thus to keep the parties and the property in the control of the court unchanged by any act upon their part until the accounts should be adjusted.

The decree and order of the chancellor are in all points affirmed.

Decree unanimously affirmed.