6 N.J. Super. 359 (1950)
71 A.2d 540
HARRY L. MIDLER, PLAINTIFF-APPELLANT,
v.
ABRAHAM M. HEINOWITZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1950.
Decided February 23, 1950.
*361 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Joseph Kraemer, attorney for and of counsel with plaintiff-appellant, argued the cause.
Mr. Andrew B. Crummy, attorney for and of counsel with defendant-respondent, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff, Harry L. Midler, instituted an action in the former Court of Chancery against defendant, Abraham M. Heinowitz, for an accounting. Midler appeals from the judgment of the Superior Court, Chancery Division, on the ground that the court erred (1) in sustaining defendant's exception No. 3 to the Master's findings, thereby refusing to charge the joint venture with an additional 169,352 lbs. of high speed steel alleged to have been purchased from the Fafnir Bearing Company and sold by Heinowitz to the Crucible Steel Company; (2) in sustaining defendant's exception *362 No. 5 to the Master's finding that the joint venture be credited with the additional sum of $10,599.39 for sale of materials bought from the Bridgeport Thermostat Company and directing that only the sum of $3,863.80 should be added thereto; (3) in determining that the sum of $4,244.20 paid to plaintiff represented advances against his share of the profits and not wages; (4) in refusing to allow interest on his award; (5) in charging plaintiff with one-half of the additional $2,000 allowed to the Special Master; and (6) in denying plaintiff a reasonable counsel fee.
The partnership venture was undertaken early in 1938, and was terminated the latter part of the same year. The reference for an accounting was directed by former Vice-Chancellor (now Judge) Bigelow. The Special Master reported that there was a net profit of $43,159.77, from the operations of the joint venture, one-half of which "* * * is $21,579.89, and charging $4,244.20 which I find and report were the advances made to Midler, as against his share of the profits, I find and report that there is due to Harry L. Midler $17,335.69, with interest at 6% from January 1, 1939;" or in the alternative, if the sum of $4,244.20 is charged as wages against Midler's share, then "* * * there is due plaintiff $19,457.78, with interest at 6% from January 1, 1939."
Defendant took several exceptions to the Master's findings. It is only necessary, however, to mention those which are the subject of this appeal, viz.:
No. 3: That the Master erred in finding that the defendant had failed to account for 169,352 lbs. of high speed steel purchased for the joint venture from Fafnir Bearing Company, and "* * * sold from time to time commencing February, 1939, for a total of $15,498.96. But the joint venture was credited only with $3,723.72 of that amount * * *" and crediting the joint venture with the difference of $11,775.24.
No. 5: That the Master erroneously charged the defendant with additional sales of $10,599.36, for alleged unaccounted sales of items purchased from Bridgeport Thermostat Company, whereas the joint venture should have been credited with only the sum of $2,524.70 for such sales.
*363 No. 8: That the Master erred in allowing interest to Midler from January 1, 1939.
The Superior Court failed to sustain the Master's findings that the joint venture was entitled to the additional sum of $11,775.24, for alleged unaccounted sales to the Crucible Steel Company of some of the material purchased from the Fafnir Bearing Company.
The court rejected the Master's recommendation that the joint venture was entitled to an additional credit for the Bridgeport Thermostat Company transactions in the sum of $10,599.39, and concluded that the sum of $3,863.80 was the proper amount.
The trial court adjudged that the net profit of the joint venture amounted to $22,019.17, one-half of which was due by Heinowitz to Midler amounting to $11,009.58, deducting therefrom the sum of $4,244.20, which the court determined represented advances made by Heinowitz to Midler on account of his share of profits, and directed that the balance of $6,755.38, be paid by defendant to Midler; that the sum of $2,000 be paid to the Master as an additional sum for his services, one-half of which was directed to be paid by each party; and that no interest on the judgment nor any counsel fees be allowed to plaintiff.
With respect to the court's failure to affirm the Master's findings, plaintiff contends that our courts have consistently ruled that a Master's finding on a factual issue will not be disturbed unless it is a very clear case of error or mistake, citing Sinnickson v. The Adm'rs of Bruere, 9 N.J. Eq. 659 (E. & A. 1855), and numerous other decisions in support thereof. While the legal principle contended for by plaintiff is conceded, it is equally clear that our courts have uniformly held that a Master's report is not conclusive and binding upon the court, but the court may, upon a Master's report coming before him for confirmation, examine the factual findings and, if it appears to the court that the Master erred in his conclusions, it may proceed to review the facts and reach its own conclusions and determinations. Sinnickson v. The Adm'rs of Bruere, supra. An examination of the record here convinces *364 us that the testimony of both plaintiff and defendant was not too reliable; in fact, one gets the impression that when it served their purpose, they had no hesitancy in prevaricating. The Master and the court were faced with a situation where there were no complete records of the joint venture. Plaintiff admitted that he had kept for several years a memorandum book of some of the transactions, but destroyed it about the time of the commencement of this action. Defendant's records were incomplete in many respects. We find the same difficulty as did the trial court in resolving the issues raised by this appeal because of the unreliability of the testimony of the plaintiff and defendant and the lack of complete and satisfactory records. Under these circumstances, the Superior Court was entirely justified in making an independent review of the factual issues and reaching its own conclusions with respect thereto, notwithstanding its findings were not in accord with the Master's. We now proceed to a consideration and determination of the questions raised by this appeal.
With respect to the first ground of appeal, involving the purchases from the Fafnir Bearing Company and sales thereof to the Crucible Steel Company, our review of the record satisfies us that the trial court's findings are supported by the believable evidence. Plaintiff contends that the joint venture should have been credited with the sale of 169,352 lbs. of high speed steel and asserts "* * * that in April, 1938, plaintiff bought 20,000 pounds of high speed turnings from the Fafnir Bearing Company of New Britain, Connecticut, with a little bit of solids; that he arranged to take each month's accumulation, and subsequently shipped 20,000 pounds of this material each month except that in September, 1938, because of increased accumulations he made two shipments and that after the joint venture came to an end and while waiting for a promised accounting he shipped the January, 1939, accumulation, which by mutual consent was allocated to the joint venture; and that he bought a total of 200,000 to 220,000 pounds of this Fafnir material, 80% of which was high speed steel, or as it is sometimes called chrome *365 or tungsten steel." In addition, plaintiff relies upon the testimony of a truck driver who allegedly drove to the Fafnir plant and brought several additional truck loads of high speed steel to defendant for the joint venture and also upon the sales made by the defendant to the Crucible Steel Company of materials bought from the Fafnir Bearing Company during the period of a year or more subsequent to the termination of the partnership, contending that the difference between defendant's purchases from Fafnir subsequent to the dissolution and the total sales thereof to Crucible represented accumulations of unsold steel at the time of the termination of the partnership. Per contra, defendant produced four invoices from the Fafnir Company, asserting that they represented the only purchases made for the joint venture. His testimony was corroborated by an official of the Fafnir Company, in that its records revealed that they were the only purchases made during the period of the existence of the joint venture and there were no other sales or deliveries by the Fafnir Company during that period of time. Plaintiff's testimony as to these transactions is entirely unconvincing, as is also the testimony of the truck driver, the latter of whom testified that he was uncertain as to whether his trips were during 1938 or 1939. Consequently, their testimony has little or no probative value in the light of the testimony of the Fafnir Company's official and its records. The Master seems to have reached his conclusion from the fact that the defendant had made additional sales of steel to the Crucible Steel Company, and by a mathematical calculation of the difference between the purchases by defendant from the Fafnir Company and the record of sales thereof to Crucible made by defendant subsequent to the termination of the partnership, defendant was chargeable with the additional sales amounting to 169,352 lbs. as representing materials owned by the joint venture and unsold at the time of its termination. We concur in the trial court's conclusion that the believable evidence does not support the Master's finding and that the only high speed steel purchased from the Fafnir Company and sold to the Crucible Steel Company is represented by the four invoices produced by the defendant.
*366 The trial court found that the joint venture was entitled to a credit of $3,863.80 for the sale of materials purchased from the Bridgeport Thermostat Company. Plaintiff contends that the court erred in his rejection of the Master's finding, that the joint venture should have been credited with an additional sum of $10,599.39, for unaccounted sales of some of the materials purchased from the Bridgeport Thermostat Company. The purchase of the merchandise in question from the Bridgeport Company for the sum of $1,314 is not disputed. The differences center around defendant's alleged failure to account for approximately 90% thereof. Defendant contends that the total amount received by him for sale of this merchandise was the sum of $2,524.70, representing six sales, in addition to the sum of $432.99 received from the sale of jars. Plaintiff testified regarding certain items that he alleged defendant had not accounted for and the approximate sales value thereof. Defendant insisted that he had accounted for the proceeds derived from the sale of all the material. The Master apparently accepted the testimony of the plaintiff and found that defendant had accounted for "Only about 10% of the total amount of this material * * *," stating, inter alia, "* * * Other parts were sold, but the prices at which they were sold were not ascertainable. Other parts may have been sold, and for these the market value was given. The total of these component parts of the oil drainer is $10,059.72; the rubber hose was sold for $539.67. So that the joint venture is entitled to an additional credit in the Sales Account of $10,599.39." The trial court, in reviewing the exception to this finding, merely stated "Exception No. 5 of the joint venture will be entitled to $3,863.80." There were no explanatory comments by the court as to how it had reached its conclusion. The trial court was unquestionably vested with authority to review the factual findings of the Master and reach his own conclusions with respect thereto. To ascertain the court's responsibility where, upon a review of a Master's findings, it reaches a contrary result with respect thereto, we quote from the opinion of Chancellor Williamson, *367 in Sinnickson v. The Adm'rs of Bruere, supra, affirmed by the Court of Errors and Appeals:
"* * * I do not mean to be understood as saying that the decision of a master should be considered as conclusive upon a matter of fact; all I mean to say is, that before the court will interfere with the report of a master upon a question of fact submitted to him, depending upon the credibility of witnesses, the error of the master must satisfactorily and clearly appear. The court has always acted upon this principle, and I think it the only correct and safe one. * * *"
This rule has been uniformly followed since its enunciation. We believe it is implicit in the applicable cases that, if upon review, the Master's factual findings are not sustained, the court should particularize the erroneous finding of the Master and the basis for its contrary conclusions. Here, the Master stated his reasons for the challenged finding. It is possible that he was in error in the result he achieved, or he may have been correct. It may well be that the court's finding is the proper one. However, we are without the benefit of the court's analysis of the facts or the reasons that impelled it to reach a contrary conclusion. Consequently, we must remand the matter to the trial court for such further consideration as may be in conformity with our determination.
Defendant contends that the court erred in determining that the sum of $4,244.20 was chargeable against his share of the net profits as advances, not as salary. We think the court decided this question correctly. No social security, federal old age benefits or other compulsory deductions were made from the payments made to plaintiff from time to time. This would indicate that the partners considered the weekly payments to plaintiff as advancements on his share of the profits. The testimony on this question is similarly contradictory, but a review thereof convinces us that it was the intention of the parties to consider the payments to Midler as advances to be charged against his share of the profits and this is supported by the testimony quoted in plaintiff's brief of Philip B. Rothchild (apparently acting as attorney at the time for both plaintiff and defendant), before Vice-Chancellor (now Judge) Bigelow in this action.
*368 It was entirely within the discretion of the trial court as to whether any allowance of interest should be made to plaintiff. Buckingham v. Ludlum, 29 N.J. Eq. 345 (E. & A. 1878). We find that under the situation here, there was no abuse of that discretion, and the court was justified in its refusal to make such allowance.
The court allowed an additional fee of $2,000 to the Master and directed that it should be charged equally against both parties. The allowance was not challenged. The plaintiff objects, however, to the direction that one-half thereof be paid by him. It was within the sound discretion of the court to direct that the allowance be borne equally by the parties.
We disagree with the plaintiff's contention that the court should have allowed counsel fees. Plaintiff contends that he was entitled to a counsel fee under the provisions of R.S. 2:29-131, providing for the allowance of counsel fees by the former Court of Chancery and under authority of the provisions of Article XI, Section IV, paragraph 8 (e), of the 1947 Constitution, transferring pending actions to the Superior Court, and R.S. 2:16-73, giving effect to that constitutional provision. This question has been recently decided by the Supreme Court adversely to plaintiff's contention in the case of John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472. It was there held that Rule 3:54-7 covering question of allowance of counsel fees, effectively supersedes R.S. 2:29-131, and that the authority theretofore vested in the Court of Chancery for the granting of counsel fees is now controlled by the aforementioned Rule.
The matter is remanded to the Chancery Division for further consideration and determination in conformity with this opinion, regarding question of amount of sales of materials bought from the Bridgeport Thermostat Company. In all other respects, the judgment is affirmed, without costs.